2020 IL App (1st) 192248

No. 1-19-2248

December 28, 2020

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| AURELIO JIMENEZ, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | No. 18 CH 14727 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Pamela Meyerson |
| THE DEPARTMENT OF FINANCIAL AND | ) | Judge Presiding. |
| PROFESSIONAL REGULATION, Division of | ) | |
| Professional Regulation, and JESSICA BAER, | ) | |
| Director of the Division of Professional Regulation, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Justices Pierce and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2014, plaintiff, Aurelio Jimenez, sought to reactivate his Illinois license to practice podiatry. Defendants, the Department of Financial and Professional Regulation (Department) and Jessica Baer, the Director of the Division of Professional Regulation (Director), ordered his Illinois podiatrist license suspended for at least five years for "unprofessional conduct" in violation of section 24(9) of the Podiatric Medical Practice Act of 1987 (Act) (225 ILCS

100/24(9) (West 2018)). Jimenez filed a complaint for administrative review, and the circuit court affirmed the Director's final decision. Jimenez appeals arguing that the Department's actions were untimely, the Director erred by not presenting expert testimony that his conduct was unprofessional, and the decision was overly harsh. For the following reasons, we affirm the circuit court's judgment.

¶ 2                                    BACKGROUND

¶ 3         Jimenez is a graduate of the Scholl College of Podiatric Medicine and previously held podiatry licenses in the States of Illinois and Indiana. He allowed his Illinois license to expire in 1993.

¶ 4         In 2001, Jimenez pleaded guilty in federal court to six counts of mail fraud and one additional count of criminal forfeiture. Jimenez served 60 months in federal prison and an additional 4 years of probation. Additionally, Jimenez was ordered to pay $2.76 million in restitution. While he was incarcerated, the State of Indiana suspended his Indiana podiatry license. In 2002, based on his criminal conviction and allegations of distributing controlled substances, practicing beyond the scope of his profession, and professional incompetence, the Indiana Board of Podiatric Medicine (Indiana Board) suspended Jimenez's Indiana license indefinitely, for a minimum period of 60 years.

¶ 5         On July 29, 2014, Jimenez applied to restore his expired Illinois podiatry license, which had been expired since 1993.

¶ 6         On May 1, 2015, the Department notified Jimenez that it intended to deny the restoration of his license. Jimenez requested a hearing, which took place on June 28, 2016. At the hearing,

the Department argued that restoration of Jimenez's podiatry license should be denied because of his conviction and administrative discipline. The administrative law judge (ALJ) agreed and recommended the denial of his license restoration.

¶ 7    The Illinois Podiatric Medical Licensing Board (Board) adopted the ALJ's recommendation. Jimenez filed a motion for rehearing, arguing that the ALJ improperly placed the burden of proof upon him. The Director granted Jimenez's motion for rehearing.

¶ 8    On March 7, 2017, the Department filed a two-count complaint against Jimenez. The first count was for "dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public" in violation of section 24(9) of the Act (*id.*). The second count concerned the failure to report the conviction and Indiana license suspension to the Department in violation of section 24(29) of the Act (*id.* § 24(29)). In January 2018, the Department refiled the same two-count complaint. On May 3, 2018, Jimenez filed an answer admitting to his conviction and Indiana administrative discipline.

¶ 9    On May 30, 2018, the Department's complaint proceeded to a formal hearing before an ALJ. At the hearing, the Department introduced evidence of the felony conviction and the Indiana Board's discipline against Jimenez.

¶ 10    Evidence was introduced that the Indiana Board summarily suspended Jimenez's Indiana license in 1998. The Indiana Board held an emergency hearing and determined that Jimenez represented "a clear and immediate danger to the public health and safety if allowed to continue to practice podiatric medicine in the State of Indiana." Jimenez stipulated to continue the suspension while the federal criminal and civil investigations of his practice were ongoing.

¶ 11 In 2002, the Indiana Board resumed its disciplinary proceeding. Jimenez wrote to the Indiana Board from a federal prison camp requesting to present documents, but his counsel did not appear at the hearing. The Indiana Board found Jimenez to be in default and proceeded to find that between 1996 and 1998, Jimenez diagnosed and treated patient C.H. for "anxiety" and prescribed Xanax. In 1998, C.H. committed suicide by taking an overdose of Xanax. In 1997, an undercover state investigator visited Jimenez's office and asked him to prescribe hydrocodone (a controlled substance also known as Lortab) because she "liked the way it made her feel." The investigator denied having any pain or symptoms, but Jimenez prescribed Fioricet to her. When the investigator returned for a second visit, again denying any pain or symptoms, Jimenez prescribed hydrocodone. Jimenez "charted false objective observations and diagnoses and billed Medicaid for treatments that were unnecessary and that he did not perform" on the investigator. Patient R.P. went to Jimenez complaining of an ingrown toenail, but Jimenez inaccurately diagnosed him as having a broken foot and performed multiple surgeries on him, billing Medicare for the surgeries. Between 1995 and 1998, Jimenez gave his handyman hydrocodone as payment for odd jobs. The Indiana Board concluded that Jimenez violated Indiana law and suspended his license indefinitely for a minimum of 60 years.

¶ 12 There were also three witnesses at the hearing. The Department called Jimenez as an adverse witness. Jimenez admitted that he pled guilty and was convicted of a felony in 2001. He also admitted that he was ordered to pay restitution and serve time in prison.

¶ 13 Jimenez then called Cory Henderson and Dr. Terri Foster-Dawson as character witnesses. Henderson met Jimenez in 2011 through church fellowship. He was never a patient of Jimenez

and did not observe Jimenez as a podiatrist. Henderson described Jimenez as a "very caring and compassionate person." Henderson also testified that he was familiar with Jimenez's conviction and underlying allegations but found Jimenez to be an "ethical" person in their interactions.

¶ 14 Dr. Foster-Dawson is a podiatrist who has practiced in Illinois for over 31 years. Dr. Foster-Dawson first met Jimenez when he was a student at the Scholl College of Podiatric Medicine. She observed Jimenez "for a week or so" in the late 1980s or early 1990s, though they had "never really worked together in the same office." Dr. Foster-Dawson observed Jimenez in practice when she visited his Indiana office in the 1990s. When asked if she had an opinion as to whether Jimenez is a good podiatrist, Dr. Foster-Dawson stated, "I do have an opinion. I think he's of a very good podiatrist. I think he is very eager to please patients and to be a cutting-edge professional…I think he keeps up with the latest innovations in the field." Concerning his time since his release from prison, Dr. Foster-Dawson testified, "He's still very active and eager to give information or when we talk about patients or particular cases, he's very abreast on the subject, and I find him to be very knowledgeable and an excellent practitioner." Dr. Foster-Dawson testified that it would be a "great idea" for him to work in her clinic, and "he would definitely be a benefit to the practice."

¶ 15 Jimenez also testified on his own behalf about his degrees, certifications, and licenses. Jimenez had no prior discipline against his Illinois license. He discussed the Indiana Board's discipline process, findings, and suspension. He disagreed with their default findings. He testified that he was unable to present evidence or witnesses because of his incarceration at the

time. He also testified that he was no longer interested in performing any billing work if allowed to return to practice. Instead, he wanted to work as a physician for the Army.

¶ 16    During the hearing, Jimenez's counsel requested that the ALJ dismiss the Department's administrative complaint because it was time-barred, and the Department was required to present expert testimony to show violation of professional standards. The ALJ denied the request but instructed that Jimenez could file a motion to dismiss. On June 29, 2018, Jimenez filed a motion to dismiss.

¶ 17    On July 16, 2018, the ALJ issued her decision, making certain findings of fact and conclusions of law. As to count I, alleging unprofessional conduct pursuant to section 24(9) (*id.* § 24(9)), the ALJ found in favor of the Department because Jimenez admitted he was convicted in 2001 and that Indiana indefinitely suspended his license for a minimum of 60 years in 2002. The ALJ found the conviction and discipline constituted "dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public." *Id.* The ALJ observed there was no need for expert testimony to show that Jimenez violated the law; he admitted the criminal conviction and Indiana discipline in his answer. The ALJ also concluded that the Department's administrative complaint was timely because it was commenced within five years of Jimenez notifying the Department of his conviction.

¶ 18    As to count II, the ALJ found that Jimenez had reported his conviction and the Indiana suspension to the Department and did not violate section 24(29) (*id.* § 24(29)). The ALJ concluded the Department failed to establish the second count because it cited no authority indicating when the reporting requirement was triggered.

¶ 19    In deciding the discipline for the violation, the ALJ considered the aggravating and mitigating evidence. The aggravating factors included the seriousness of the offense, the presence of multiple offenses, prior disciplinary history in other jurisdictions, and financial gain from Jimenez's offenses. In mitigation, the ALJ took account of his payment of partial restitution and cooperating with the authorities to the extent that he pleaded guilty in the criminal case. The ALJ recommended that Jimenez's Illinois podiatric license be indefinitely suspended for a minimum period of five years.

¶ 20    The Board adopted the ALJ's findings of fact, conclusions of law, and recommended discipline.

¶ 21    On September 14, 2018, Jimenez filed exceptions and a motion for rehearing in which he reasserted the arguments he made at the formal hearing. He argued that the Department violated the statute of limitations by imposing discipline on a conviction that is more than 10 years old, as well as an Indiana administrative discipline that is more than 10 years old. Jimenez also argued that the Department cannot establish "unprofessional, dishonorable and unethical conduct of a character likely to deceive, defraud or harm the public" without expert testimony and that the discipline of a five-year suspension for a 2001 federal conviction was overly harsh and disproportionate.

¶ 22    On November 2, 2018, the Director denied the motion for rehearing and adopted the findings and conclusions of the ALJ and the Board, imposing an indefinite suspension of Jimenez's podiatry license for a minimum of five years.

¶ 23      On November 28, 2018, Jimenez filed a complaint for administrative review of the Director's final decision in the circuit court of Cook County. The circuit court affirmed the decision of the Department in a written order on October 8, 2019. Jimenez timely filed his notice of appeal.

¶ 24                                                    ANALYSIS

¶ 25      On appeal, Jimenez argues that (1) the Department's actions were untimely, (2) the Director erred by not presenting expert testimony that Jimenez's conduct was unprofessional, and (3) that the sanction was disproportionate to the evidence and findings.

¶ 26      In an administrative hearing, the Department bears the burden of proving by clear and convincing evidence a violation of the Act. 68 Ill. Adm. Code 1110.190(a), amended at 9 Ill. Reg. 1110 (eff. Jan. 9, 1985). The Director's final administrative decision is subject to judicial review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)). 225 ILCS 100/39 (West 2018). On appeal, this court reviews the decision of the administrative agency rather than the judgment of the circuit court. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 847 (2007).

¶ 27      On administrative review, the appropriate standard of review depends on the issue presented. *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 51. An agency's findings of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). A finding is against the manifest weight of the evidence only when the opposite conclusion is

8

clearly evident. *Id.* Where there exists "any evidence in the record" to support a finding, an opposite conclusion is not clearly evident. *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16. That an opposite conclusion may be reasonable, and a court may have made a different finding based on the same evidence, are insufficient bases for reversing an agency's factual finding. *Grafner v. Department of Employment Security*, 393 Ill. App. 3d 791, 796 (2009). "It is not the function of *** the appellate court in review of administrative proceedings to reweigh evidence or assess credibility of witnesses." (Internal quotation marks omitted.) *Cruz v. Dart*, 2019 IL App (1st) 170915, ¶ 49.

¶ 28     When the fact finder determines the legal effect of a given set of facts, that is a mixed question of law and fact, the agency's decision will be upheld unless it is clearly erroneous. *Magnus v. Department of Professional Regulation*, 359 Ill. App. 3d 773, 785 (2005). "A decision will be deemed clearly erroneous only where the reviewing court, based on the entire record, is 'left with the definite and firm conviction that a mistake has been committed. [Citations.]' " (Internal quotation marks omitted.) *Id.* Legal questions are reviewed *de novo*. *Id.*

¶ 29     Jimenez first argues that the Department was time-barred from bringing a complaint. This argument presents a question of law, which we review *de novo*. *Johnson v. O'Connor*, 2018 IL App (1st) 171930, ¶ 16.

¶ 30     The Act declares that the practice of podiatric medicine affects the "public health, safety and welfare" of the State of Illinois and is "subject to regulation and control in the public interest." 225 ILCS 100/1 (West 2018). As a matter of public interest, only qualified persons

should be authorized to practice podiatric medicine. *Id.* The purpose of the Act is to protect the public from those not qualified to practice podiatry and "shall be liberally construed to best carry out" this purpose. *Id.* The Act authorizes the Department to refuse to issue, renew, or restore any license or take other disciplinary or nondisciplinary action the Department deems proper. *Id.* § 24. Specifically, the Act enumerates 31 grounds for disciplinary action. *Id.*

¶ 31     The Act imposes a five-year statute of limitations for bringing an action against a licensee. *Id.* The five years begins from the date on which the Department learns of the alleged conduct or violation. *Id.* Here, the Department received notice of Jimenez's past conduct in 2014 and filed its administrative complaint in 2017. Therefore, the complaint was filed within the Act's statute of limitations.

¶ 32     We note that the Act also provides that "[e]xcept for the grounds set forth in items (8), (9), (26), and (29) of this Section, no action shall be commenced more than 10 years after the date of the incident or act alleged to have been a violation of this Section." *Id.* Jimenez was convicted of a felony in 2001 and had his Indiana license suspended indefinitely in 2002. The Department filed its complaint in 2017. Grounds (3), felony conviction, and (11), discipline by another state licensing agency, are not exempted from this ten-year limit. Therefore, if either ground were the reason for the suspension, then the Department's complaint would be untimely, but that is not the case here.

¶ 33     Although the Department referenced Jimenez's conviction and administrative discipline, neither was the ground used to suspend Jimenez's license. Instead, the Director relied on ground (9), "dishonorable, unethical or unprofessional conduct of a character likely to deceive,

defraud or harm the public," which is exempted from the time limit. *Id.* § 24(9). The Department used the allegations contained within Jimenez's conviction and discipline as evidence of his unprofessional conduct. Jimenez argues that because his conviction and administrative discipline were time-barred from disciplinary action, any underlying allegations of unprofessional conduct should also be barred. We disagree.

¶ 34    In construing a statute of limitations, courts look to the plain and ordinary language used in the statute. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 15. Statutes must be interpreted to effectuate the legislature's intent, which is most reliably indicated by the plain meaning of the text. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. A statute should not be construed in a way that renders part of it a nullity. *Nelson v. Artley*, 2015 IL 118058, ¶ 25. A court may "consider whether a particular interpretation of the statute will lead to absurd, inconvenient, or unjust results." *People v. Brown*, 2020 IL 124100, ¶ 30.

¶ 35    Jimenez's interpretation of the Act disregards its plain language and would lead to absurd results. Under Jimenez's interpretation, if allegations of unprofessional conduct result in either a felony conviction or administrative discipline, then ground (9) becomes bound by the 10-year limit, but unprofessional conduct would be subject to discipline beyond 10 years if it did not lead to a conviction or discipline. This interpretation would offer a perverse incentive to licensees to conceal their felony convictions and non-Illinois discipline for at least 10 years, and Jimenez's interpretation would not serve the Act's purpose to protect the public from

unqualified persons practicing podiatric medicine. We find that the legislature specifically exempted ground (9) from the 10-year statute of repose.

¶ 36 Jimenez's argument also creates a limitation on the Act that the legislature did not express. He argues the 10-year statute of repose should preclude the Department from proceeding on ground (9) because the more specific grounds of (3) and (11) are the bases for the disciplinary action. Relying on *Moore v. Green*, 219 Ill. 2d 470, 480 (2006), Jimenez maintains that "[w]here a general statutory provision and a more specific statutory provision relate to the same subject, we will presume that the legislature intended the more specific provision to govern."

¶ 37 Jimenez's reliance on *Moore* is misplaced. In *Moore*, a municipality and two of its police officers were accused of willfully and wantonly failing to assist a victim of domestic violence. *Id.* at 474. The sole issue in that case was whether the absolute immunity provided by one statute or the limited immunity provided by a different statute applied to the claims. *Id.* There was a clear conflict among the statutory provisions as both immunities could not apply. Our supreme court held that the more specific statute governed given its purpose and the nature of the claims. *Id.* at 489-90.

¶ 38 Here, there is only one statute at issue with no conflict. Setting aside the statute of repose issue, Jimenez suggests that when a more specific ground is available for disciplinary action, the Department is barred from relying on the broader ground (9). This is contrary to the legislative intent in the Act. Section 24 of the Act authorizes the Department to impose discipline for any of 31 enumerated grounds, including ground (9). Additionally, no conflict

created when the Department relies on ground (9) and another more specific ground. Unlike in *Moore*, various grounds for disciplinary action may overlap but can still apply together. The Department has the discretion to charge any statutory violation that the allegations support, as long as it does not act arbitrarily or capriciously. See 225 ILCS 100/24 (West 2018); *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 135. Here, the Department had the discretion to base its complaint on ground (9), even where more specific grounds were time-barred. Therefore, the Department's complaint was not untimely.

¶ 39    Jimenez next argues that the Department erred in not presenting expert testimony that Jimenez's conduct was unprofessional. "We review an administrative agency's decision regarding the admission of evidence for an abuse of discretion." *Danigeles v. Illinois Department of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 82. Jimenez maintains that without any expert testimony in the record, this court has no basis to determine the standard for professional, honorable, and ethical conduct, and how he breached that standard. We disagree.

¶ 40    Expert testimony explaining the standard for unprofessional conduct was unnecessary because Department rules already define those standards. Section 1360.95 of Title 68 of the Illinois Administrative Code provides a nonexhaustive list of acts or practices that constitute "dishonorable, unprofessional and unethical conduct," including practicing or offering to practice beyond one's competency and the submission of fraudulent claims for services to any health insurance company or health service plan or third-party payor. 68 Ill. Adm. Code 1360.95(a) (2006). The section also incorporates by reference the code of ethics of the

13

American Podiatric Medical Association (APMA). 68 Ill. Adm. Code 1360.95(b) (2006). Relevant here, APMA business ethics rule BE5.0 requires podiatrists "to comply with the letter of applicable laws and regulations." Its interpretive guidelines explain further that "[f]ailure to be informed of applicable laws and regulation may constitute deliberate ignorance or reckless disregard and, therefore is an ethical violation." Jimenez pleaded guilty in federal court to mail fraud and criminal forfeiture, and the Indiana Board found that he violated Indiana law. These acts were code of ethics violations and, therefore, met the Act's definition of unprofessional conduct.

¶ 41    Jimenez argues that because paragraph (a) of section 1360.95 of Title 68, which defines unprofessional conduct, does not specifically include a code of ethics violation and paragraph (b), which incorporates the code of ethics, does not state that a violation is subject to the same disciplinary action provided in paragraph (a), the Department did not intend for a violation to warrant a license suspension. We are unpersuaded by this argument. First, paragraph (a) is not an exhaustive list of unprofessional acts or practices. Next, the Department incorporated the code of ethics along with its standards for dishonorable, unprofessional, or unethical conduct and did so pursuant to ground (9) of the Act. The Department clearly intended for a code of ethics violation to meet its definition of unprofessional conduct.

¶ 42    Jimenez then argues that section 1360.95 of Title 68 of the Illinois Administrative Code is too vague to support a violation of the Act. A law is so vague that it violates due process only if "persons of common intelligence must necessarily guess at its meaning and differ as to its application." (Internal quotation marks omitted.) *Vuagniaux v. Department of Professional*

*Regulation*, 208 Ill. 2d 173, 192 (2003). Jimenez maintains that reference in the code of ethics to "applicable laws" is vague because neither the Department rules nor the code of ethics specifically require complying with Indiana regulatory standards. We disagree.

¶ 43     The Act lists discipline by another state licensing agency as is one of the 31 enumerated grounds for disciplinary action. 225 ILCS 100/24(11) (West 2018). The legislature was evidently concerned with a licensee's conduct in another state. In this case, when considering the Act's legislative purpose of protecting the public from people unfit to practice, "applicable laws" also means Indiana regulatory standards. It should not be surprising that Illinois would expect an Indiana podiatrist to understand and comply with Indiana regulatory laws during their time practicing in the state. Therefore, section 1360.95 is not unconstitutionally vague.

¶ 44     Expert testimony was also unnecessary because it did not take special knowledge to determine that Jimenez engaged in unprofessional conduct. Again, Jimenez pleaded guilty to mail fraud. Additionally, the Indiana Board determined that he prescribed Xanax beyond the scope of practice, that the foot surgeries were not medically necessary, and that his charting and prescribing patterns fell below the standard of care. Generally, expert testimony is required where the subject matter is so complicated that lay persons are not in an adequate position to assess whether a breach of duty has occurred. *Holzrichter*, 2013 IL App (1st) 110287, ¶ 93. Here, a layperson could conclude that Jimenez's acts were unethical and unprofessional and that he breached his duty.

¶ 45     The Department duly introduced Jimenez's conviction and administrative discipline, which described the underlying allegations. "[W]here an administrative agency makes factual

determinations involving technical concepts unique to its expertise, expert testimony must be introduced into the record supporting the agency's position." (Emphasis omitted.) *Chase v. Department of Professional Regulation*, 242 Ill. App. 3d 279, 285 (1993). "[A]n agency's findings must be based on evidence appearing in the record, so that each party may have an opportunity to cross-examine witnesses, inspect documents, and to introduce contrary testimony." (Internal quotation marks omitted.) *Id.* at 286. Here, the Director did not make factual findings involving technical issues, and Jimenez was not deprived of an opportunity to challenge the evidence. Therefore, we hold that the Director did not abuse her discretion in not presenting expert testimony that Jimenez violated section 24(9) of the Act.

¶ 46    Finally, Jimenez argues that the sanction was disproportionate to the evidence and findings. "The standard of review is whether the Director abused [her] discretion in the imposition of the sanction." *Danigeles*, 2015 IL App (1st) 142622, ¶ 93. The Director abuses her discretion when the sanction imposed is overly harsh in view of the mitigating circumstances or unrelated to the purpose of the statute. *Nwaokocha*, 2018 IL App (1st) 162614, ¶ 53. On review, we " 'defer to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest.' " *Danigeles*, 2015 IL App (1st) 142622, ¶ 93 (quoting *Reddy v. Department of Professional Regulation*, 336 Ill. App. 3d 350, 354 (2002)). Jimenez argues that the indefinite suspension for a minimum of five years was overly harsh in view of the mitigating circumstances. We disagree.

¶ 47    As previously stated, the purpose of the Act is to protect the public from those unfit to practice podiatry. 225 ILCS 100/1 (West 2018). Jimenez was sanctioned for prescribing and

16

distributing controlled substances without a medical purpose, performing unnecessary surgeries, and submitting fraudulent billing. The severity of his conduct represents a serious threat to public safety. In mitigation, Jimenez presents the length of time since conviction, his successful sentence completion, continued restitution payments, and character witnesses' testimony. He contends that the Director failed to properly consider this evidence and that the sanction was therefore overly harsh. On administrative review, this court does not assess the credibility of witnesses or reweigh the evidence. *Cruz*, 2019 IL App (1st) 170915, ¶ 49. The Director, as the fact finder, "may accept or reject as much or as little of a witness's testimony as he pleases." *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 658 (2009). Considering Jimenez's conduct and the mitigating circumstances, we hold that the indefinite suspension for a minimum of five years was not an overly harsh sanction and that the Director did not act unreasonably or arbitrarily.

¶ 48                                                 CONCLUSION

¶ 49        For the foregoing reasons, we affirm the judgment of the circuit court upholding the Director's final administrative decision to indefinitely suspend Jimenez's Illinois podiatry license for a minimum of five years.

¶ 50        Affirmed.

---

**No. 1-19-2248**

---

| | |
|---|---|
| **Cite as:** | *Jimenez v. Department of Financial & Professional Regulation*, 2020 IL App (1st) 192248 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-14727; the Hon. Pamela Meyerson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael K. Goldberg and Robert A. Bauerschmidt, of Goldberg Law Group, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Caleb Rush, Assistant Attorney General, of counsel), for appellees. |

---