# Illinois Official Reports

## Appellate Court

---

***Cook County School District 130 v. Illinois Educational Labor Relations Board*, 2021 IL App (1st) 200909**

---

| | |
|---|---|
| Appellate Court Caption | COOK COUNTY SCHOOL DISTRICT 130, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73, Respondents. |
| District & No. | First District, Fifth Division<br>No. 1-20-0909 |
| Filed | August 20, 2021 |
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 2019-CA-0022-C. |
| Judgment | Affirmed. |
| Counsel on Appeal | Richard F. Bruen and John P. Wise, of Montana & Welch, LLC, of Palos Heights, for petitioner.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.<br><br>Sam W. Hensel, of Service Employees International Union, Local 73, of Chicago, for other respondent. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.


**OPINION**

¶ 1    Respondent Service Employees International Union, Local 73 (union), represents custodians working for petitioner Cook County School District 130 (School District). The union filed two unfair labor practice charges before the Illinois Educational Labor Relations Board (Labor Board). The basis of the first charge was that the School District terminated the employment of custodian Susan Gracie in violation of the union contract. The union also charged that the School District should have arbitrated the grievance it filed regarding Gracie's termination. After extensive hearings, the Labor Board upheld the unfair labor practice charges, ordered Gracie's reinstatement, held that the grievance was arbitrable, and directed the School District to take certain remedial steps. The School District has sought direct administrative review of the decision in this court. We affirm the Labor Board's order determining that the School District had committed unfair labor practices by (1) terminating the employment of a school custodian and (2) not arbitrating a grievance that the employee's union filed over the termination.

¶ 2                              BACKGROUND
¶ 3    On November 28, 2018, the union filed an unfair labor practice charge with the Labor Board, alleging that the School District violated the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/1 *et seq.* (West 2016)) by terminating Gracie's employment in retaliation for her union activities. The unfair labor practice charge was filed on the same day Gracie was fired. The Labor Board issued a complaint and notice of hearing on the unfair labor practice charge.

¶ 4    About a week later, the union also filed an internal grievance regarding Gracie's firing. The School District denied the grievance at various stages. When the union moved forward to arbitrate the grievance, as would be the normal practice, the School District asserted that the grievance could no longer be arbitrated because of the election of remedies clause in the union contract.

¶ 5    The union's original unfair labor practice charge was assigned to an administrative law judge at the Labor Board. At the beginning of the hearing, over the School District's objection, the administrative law judge allowed the union to amend the original charge to add a second unfair labor practice charge relating to the School District's refusal to arbitrate the grievance that it had filed over Gracie's termination.

¶ 6    The amended charges proceeded to a consolidated evidentiary hearing before the administrative law judge. Nine witnesses testified at the hearing, and almost 200 pages of exhibits were presented. We summarize only the testimony and other evidence most relevant to the issues raised in the petition for review.

¶ 7        Gracie had worked as a custodian for the School District for about 20 years, was employed as a custodian I, and had no prior disciplinary record. The School District also employed persons in the classification of custodian II, which was a lower-paying position than custodian I. Gracie was assigned to the Nathan Hale Primary School. Her duties included cleaning classrooms, bathrooms, and other facilities.

¶ 8        Gracie was also a member of the union's bargaining committee and was a union steward. As union steward, she received complaints from fellow union members and tried to resolve them with Daniel Grand, the School District's director of facilities, before putting them in writing as "step 2" grievances. On July 31, 2018, before the incident regarding Gracie's taking of school property occurred (see *infra* ¶ 10), the union had filed a written grievance on behalf of a custodian II, George Frederick. The grievance alleged that the School District violated the collective bargaining agreement by neither interviewing him for a potential promotion to custodian I nor notifying him that a vacancy in that position existed. Gracie's name appears on the grievance as Frederick's union steward, and she attended various meetings regarding the grievance in her capacity as union steward. Rather than promoting Frederick from among the in-house ranks, the board of education hired the son of its own vice president for the position. The School District denied the Frederick grievance at all levels, and the union did not pursue it to arbitration. However, after the School District terminated Gracie, Frederick was promoted to one of three open custodian I positions.

¶ 9        At Nathan Hale Primary School, kindergarten and special education classrooms were equipped with their own small bathrooms. Gracie had a practice of purchasing air fresheners with her own funds and securing them in plastic bags in these particular bathrooms to mask foul odors caused when students spilled urine on heaters near the toilets. Gracie routinely cleaned the classroom used by special education teacher Grace Haberkorn. One day, in the early morning hours before class began, Haberkorn came into the room and saw Gracie removing zip-top bags from her teacher's supply cabinet. Gracie did not obtain specific permission from Haberkorn to take the bags. When Gracie saw Haberkorn, she stated that she was waiting for Haberkorn to arrive to ask permission to take the bags. Although Haberkorn told Gracie it was acceptable to take the bags, Haberkorn was angered by the incident and left for a few minutes. Upon returning to the room, she told Gracie to request permission in the future before taking items from the supply cabinets. Gracie said she would, and she returned later the same morning with a box of zip-top bags which she purchased during her lunch break to replace the ones she had taken earlier.

¶ 10       Haberkorn reported Gracie to the school principal, hoping merely that Gracie would be admonished regarding proper use of teacher supplies. The principal told Haberkorn to memorialize the incident in an e-mail. Haberkorn did so at the principal's request. The e-mail stated, in pertinent part as follows:

>        "I came into my classroom this morning earlier than usual and [Gracie] was taking supplies from the drawers in my classroom. She did replace what was taken later that day, but I let her know that in the future I would like her to ask me before taking items from the classroom as they are intended for the children."

¶ 11       Haberkorn, who no longer worked for the School District at the time of the Labor Board hearing, testified that, had she known that reporting Gracie would result in her termination, she never would have reported Gracie to the principal. The principal forwarded the e-mail to the School District superintendent, Dr. Colleen McKay, and to John Dudzik, the assistant director

of human resources. The superintendent ordered Dudzik to conduct an investigation, and she put Gracie on paid leave pending the result of the investigation. The administrative law judge noted that Haberkorn had a flat affect, was "visibly upset during her testimony[,] and [was] crying while she testified."

¶ 12    Dudzik interviewed Gracie in the presence of the principal, another human resources staffer, and a union representative. At the conclusion of the investigation, Dudzik submitted a report to Dr. McKay, recommending that Gracie be terminated. McKay told Gracie in writing that her taking the zip-top bags was "theft in the school setting," which was "an extreme breach of trust." The board of education of the School District voted to terminate Gracie's employment, and it notified Gracie accordingly.

¶ 13    A former Nathan Hale Primary School teacher, Paula Tagler, testified that Gracie cleaned her classroom for nine years. Gracie would sometimes take or borrow supplies she might need for cleaning. Tagler indicated this was done by other custodians as well. Since Tagler was not always present to give permission for Gracie to take supplies, she had told Gracie to take what she needed even in her absence.

¶ 14    Dudzik testified that no other custodian had been disciplined for taking teacher supplies for school cleaning purposes. A signed 2014 letter of reprimand from Grand was introduced into evidence that accused Jose Coreas, a custodian I at Nathan Hale Primary School, of taking two bags of salt. Neither Coreas nor Grand (who was still a School District employee at the time of the hearing) testified.

¶ 15    An August 31, 2018, signed letter from Grand to Gracie on school letterhead was admitted into evidence. In the letter, Grand states that he conducted a walk-through of the school gym and found that the windows were not cleaned "as [a custodial supervisor] instructed you to do." Accordingly, Grand stated that, if Gracie failed to clean the windows properly in the future, "further disciplinary action may be taken against you."

¶ 16    As set forth more fully in our analysis below, Gracie also testified that, during an earlier dispute regarding a custodian whose work location was divided among two different buildings, Grand told her, "When you cause trouble, that's what you get."

¶ 17    After briefing, the administrative law judge issued findings of fact and a recommended decision and order sustaining both unfair labor practice charges. She found Gracie's testimony to be credible, perhaps excepting one statement that is of little relevance to this petition for review.[1] She also found that the union established an unrebutted *prima facie* case on its unfair labor practice charge and that the School District violated section 14(a)(1) and (3) of the Act (115 ILCS 5/14(a)(1), (3) (West 2018)) by terminating Gracie.

¶ 18    The judge rejected the School District's defense that Gracie's termination was justified as a punishment for "theft" of the zip-top bags, finding the defense to be pretextual. She found several facts that supported that finding. She determined that (1) the School District "expressed

---

[1]Gracie claimed that she had been improperly denied overtime work because she was "causing problems." In a footnote, the administrative law judge specifically stated that she did not credit this testimony because it lacked foundation. Later in the footnote, however, the judge specifically rejected the School District's general attacks on Gracie's credibility. The footnote concludes with a statement that confusingly conflates admissibility with credibility. The judge stated that "aside from the portion of Gracie's statement quoted earlier in this footnote [meaning the denial of overtime statement], I found her testimony credible."

hostility towards unionization by Grand's August 2018 statement to Gracie[:] that's what you get when you cause trouble as to why the new custodian's duties were divided between two schools" and (2) there was evidence of disparate treatment and pretext because Coreas had also committed theft but was not discharged. She also found support for her finding of pretext in evidence that custodians at the school often asked teachers for supplies, "to the point where [a former teacher] told Gracie to take what she needed if she was not around." She stated that "taking supplies without permission to use as part of her job and then replacing them, does not seem to merit discharging a twenty-year employee with no prior history of discipline."

¶ 19     The administrative law judge also found that the School District committed an unfair labor practice when it refused to arbitrate Gracie's grievance because, by its plain terms, the election of remedies clause applied when a "member of bargaining unit" sought the first remedy. Here, "it was the Union, not Gracie or any other bargaining unit member, who filed the instant charge." Therefore, the election of remedies clause did not apply. Further, the judge noted, there is a legal presumption favoring arbitration of labor grievances in doubtful cases.

¶ 20     After consideration of exceptions filed by the School District, the Labor Board issued an opinion and order adopting the judge's findings of fact. The Labor Board determined that the School District committed an unfair labor practice by violating section 14(a)(3) of the Act, and, derivatively, that it violated section 14(a)(1) of the Act by terminating Gracie. In particular, the Labor Board relied on Grand's statement, which it attributed to the School District on the basis that Grand was the School District's agent. The Labor Board relied, as well, on the fact that Coreas received a much more lenient punishment for misconduct of the same nature.

¶ 21     The Labor Board also found that the School District committed a second unfair labor practice in refusing to arbitrate the grievance that the union filed on Gracie's behalf regarding her termination. The School District has filed a petition for administrative review of the Labor Board's decision in this court pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017).

¶ 22                              ANALYSIS

¶ 23     In its petition for review, the School District presents seven contentions of error. It contends that the Labor Board erred in (1) finding that the School District violated the Act when the School District had a legitimate business reason to terminate Gracie; (2) finding a causal connection between Gracie's protected activities and her termination; (3) relying upon the statement of employee Grand to find the School District has an anti-union animus; (4) determining that the School District's written reprimand of employee Coreas for allegedly stealing salt constituted disparate treatment and supported a finding that the School District's stated justification for terminating Gracie was pretextual; (5) relying on the testimony of a former teacher (who said she told Gracie to take supplies that she needed if the teacher was not around) as additional support to find that the School District's actions were pretextual; (6) relying on the testimony of another former teacher to find that the School District's actions were pretextual; and (7) holding that because the union, rather than Gracie, filed the underlying unfair labor practice charge, the election of remedies clause in the union contract did not bar the arbitration of Gracie's grievance.

¶ 24     The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)) governs our review of the Labor Board's decision. The scope of that review "extend[s] to all questions of law and fact presented by the entire record before the court." *Id.* § 3-110. "The applicable

standard of review *** depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). The Labor Board's findings of fact are "held to be *prima facie* true and correct" (735 ILCS 5/3-110 (West 2018)) and will be disturbed on review only if they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). Findings of fact are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Id.* We review the Labor Board's findings of fact and order, not those of the administrative law judge. *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 64 (2000). We also give substantial weight and deference to an agency's interpretation of its own statute unless it is erroneous, unreasonable, or conflicts with the statute. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 31 (citing *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007)).

¶ 25 Whether an unfair labor practice has been committed presents a mixed question of fact and law. *City of Belvidere*, 181 Ill. 2d at 205. Mixed questions of fact and law " 'are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " (Internal quotation marks omitted.) *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008) (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005)). Under this standard, the Labor Board's decision will be reversed only when the decision is clearly erroneous, that is, when, based on the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " (Internal quotation marks omitted.) *Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board*, 224 Ill. 2d 88, 97-98 (2007) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)). In this case, then, we must determine whether either of the Labor Board's two findings of unfair labor practices was clearly erroneous.

¶ 26 The Act provides the statutory framework for our analysis. Sections 14(a)(1) and 14(a)(3) of the Act state as follows:

"(a) Educational employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employees in the exercise of their rights guaranteed under the Act.
***
(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization." 115 ILCS 5/14(a)(1), (3) (West 2018).

¶ 27 Our supreme court has explained the analytical steps required to determine whether an employer has violated these sections of the Act:

"It has been held that section 14(a)(1) refers to adverse action taken against an employee as a result of any protected concerted activity, while section 14(a)(3) refers specifically to discrimination based on union activity. [Citation.] Where, as here, an alleged violation of sections 14(a)(1) and 14(a)(3) stems from the same conduct, the section 14(a)(1) violation is said to be derivative of the section 14(a)(3) violation.

- 6 -

[Citation.] In such cases, the test to be applied is the one used to determine whether a section 14(a)(3) violation occurred. [Citation.] A *prima facie* case of a section 14(a)(3) violation requires proof that the employee was engaged in activity protected by section 14(a)(3); that the District was aware of that activity; and that the employee was discharged for engaging in that protected (union) activity. [Citation.] The third part of the test is established if the employee's protected activity was a substantial or motivating factor for the discharge or other adverse action taken against the employee. [Citation.] Since motive is a question of fact, a Board's finding as to motive can only be set aside if it is against the manifest weight of the evidence. [Citations.] However, even if a *prima facie* showing has been made, there can be no finding that an unfair labor practice occurred if the employer can demonstrate, by a preponderance of the evidence, that the adverse action would have occurred notwithstanding the protected activity." *SPEED District 802 v. Warning*, 242 Ill. 2d 92, 112-13 (2011).

¶ 28 As to whether protected activity was a substantial or motivating factor in the adverse employment action, our supreme court has also explained:

"Where an employer is charged with an unfair labor practice because of the discharge of an employee engaged in protected activity, the charging party must first show, by a preponderance of the evidence, that the adverse employment action was 'based in whole or in part on antiunion animus—or *** that the employee's protected conduct was a substantial or motivating factor in the adverse action.' [Citation.] Since motive is a question of fact, the Board may infer discriminatory motivation from either direct or circumstantial evidence, and, because motive involves a factual determination, the Board's finding must be accepted if supported by substantial evidence. [Citation.] Antiunion motivation may reasonably be inferred from a variety of factors, such as an employer's expressed hostility towards unionization, together with knowledge of the employee's union activities [citation], proximity in time between the employees' union activities and their discharge [citation], disparate treatment of employees or a pattern of conduct which targets union supporters for adverse employment action [citations], inconsistencies between the proffered reason for discharge and other actions of the employer [citation], and shifting explanations for the discharge [citations]." *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345-46 (1989).

¶ 29 With this legal backdrop, we consider each of the seven assignments of error in order. The first six relate to the first unfair labor practice charge, which directly concerned Gracie's termination. The seventh concerns the School District's refusal to arbitrate the later-filed grievance.

¶ 30 The School District first contends that the Labor Board erred in finding that the School District violated the Act when the School District had a legitimate business reason to terminate Gracie. In other words, it contends "that the adverse action would have occurred notwithstanding the protected activity." This contention involves the last prong of the *SPEED District 802* test. See *SPEED District 802*, 242 Ill. 2d at 112-13.

¶ 31 For the sake of our analysis, we will assume that Gracie's taking of zip-top bags for school housekeeping purposes constituted a legitimate business reason to discipline her. Once the School District articulated a legitimate business reason for the discipline, the Labor Board was required to determine whether the reason was *bona fide* or pretextual. *City of Burbank*, 128 Ill. 2d at 346 (citing *Marathon LeTourneau Co. v. National Labor Relations Board*, 699 F.2d 248,

252 (5th Cir. 1983)). The property in question consisted only of a few plastic bags of trivial value. Gracie's actions were taken out of concern for a hygienic student environment and involved spending her own personal funds in furtherance of that purpose. She did not plan to use the bags for her own personal needs but rather to hold air fresheners used in the student bathroom. She replaced the bags promptly upon learning of the classroom teacher's concern. These facts strongly support the Labor Board's conclusion that the School District had no *bona fide* basis to terminate Gracie.

¶ 32      The School District counters this argument, citing a nonprecedential state labor board case, and a federal race discrimination case involving a nonunion employee, *Blise v. Antaramian*, 409 F.3d 861 (7th Cir. 2005), for the proposition that courts should not act as "super-personnel department[s]." We do not find these cases persuasive. We do not quarrel with the principles that an employer may discipline employees for misconduct and that a court's role in interfering with personnel decisions is limited. Even so, the Labor Board, and this court, have proper roles in enforcing the Act and in protecting employees' interests in continued employment against retaliatory disciplinary decisions based on weak pretextual justifications.

¶ 33      Therefore, even without considering the markedly different penalty received by Coreas as a comparator (an issue we discuss below), the Labor Board's determination that the School District's proffered justification was pretextual was not clearly erroneous. Therefore, we reject the School District's first assignment of error.

¶ 34      As its second assignment of error, the School District argues that the Labor Board erred in finding a causal connection between Gracie's protected activities and her termination. Applying the *Burbank* tests, the Labor Board explained that there were "multiple factors demonstrating circumstantial evidence of unlawful motive [by the School District]." The Labor Board found that these included (1) Grand's statement about what happens "when you cause trouble"; (2) a stipulation that the School District was aware of Gracie's union activities; (3) Gracie's filing of a grievance on behalf of fellow custodian Frederick; (4) the four-month period between the protected activities and the termination, which the Labor Board characterized as a "short span"; (5) the imbalance between the discipline received by Coreas and Gracie; and (6) Dudzik's and McKay's impermissible anti-union motivations, which tainted their recommendation to the School District to terminate Gracie.

¶ 35      The *Burbank* tests provide our framework. The Labor Board was entitled to infer anti-union motivation from the School District's knowledge of Gracie's union activities, the proximity in time between her union activities and her discharge, the disparate treatment of Coreas, and inconsistencies between the School District's proffered reason for discharge and its other actions. See *Burbank*, 128 Ill. 2d at 345-46. This substantial evidence was internally consistent and tracked the *Burbank* factors. The Labor Board was entitled to infer an improper motivation from this evidence. Again, we cannot find that the Labor Board's determination that the School District's finding of a causal connection was clearly erroneous.

¶ 36      The School District's third assignment of error has three subparts. It contends that the Labor Board should not have relied on the statement of employee Grand to find the School District has an anti-union animus because (1) Gracie was not a credible witness, (2) the statement was inadmissible hearsay, and (3) the Labor Board improperly assigned the statement to the School District itself through an agency theory. Neither party called Grand as a witness, so the sole evidentiary source of the statement was Gracie's own testimony. The

School District objected to admission of the statement, but the administrative law judge overruled the objection.

¶ 37 Because this statement is a key basis upon which the Labor Board relied for its findings, we set it forth at length, omitting colloquies regarding admissibility and other technical discussions. The relevant testimony, in context, is as follows:

"Q. [by union's attorney] Okay, were there any statements made by the District to you, that you construed as anti-union?

A. [by Ms. Gracie] Yes.

(Objection made and overruled.)

Q. And what were those statements?

A. When we were hired, we hired, once again thanks to Mrs. or Dr. McKay, hired a custodian for our building due to the fact of the lack of positions, that custodian was told that she now had to be divided up between the two buildings. When I requested why, because she was hired for our building, to help us out, they said that, when you cause trouble, that's what you get. You get it taken away. And she then went from one building to the other, and the building she went to was also George Frederick, and he was told that he was not to have any overtime either, due to this issue, and now—-

* * *

Q. And you mentioned a statement earlier. Who was that statement made by where he said if you cause trouble?

A. Dr. or sorry, Mr. Grand, our Supervisor. He has made several statements like that during the process of us filing the grievance.

Q. And what were those statements made by Dan Grand, your supervisor in District 130?

* * *

A. He approached and said that I was—

Q. When did he approach you?

A. He showed up at my primary where I was at. And I would say around, I would say in the morning between 7:00 and 9:00.

Q. On what date approximately?

A. I don't know.

Q. In 2018?

A. Yes, sometime in August, and he stated to me then, because I requested about the overtime, due to the fact that they pulled Michelle out of our building, and that she was put in our building for us, to help us.

Q. Who is Michelle?

A. She was another custodian that worked 10:00 to 7:00, and he says, well, that's what happens when you start trouble."

¶ 38 The School District offers three reasons why the Labor Board's reliance on the "start trouble" statement was improper. We begin with its contentions relating to the basic credibility of Gracie's testimony. The School District argues that Gracie "displayed serious credibility problems" and that some of her other testimony was "completely unbelievable." It notes that the statement also lacks credibility because no one else heard the statement, Gracie could not

- 9 -

pinpoint the date on which Grand made the statement, and the statement was never the subject of a grievance. This line of argument can be easily resolved. "On administrative review, this court does not assess the credibility of witnesses or reweigh the evidence." *Jimenez v. Department of Financial & Professional Regulation*, 2020 IL App (1st) 192248, ¶ 47 (citing *Cruz v. Dart*, 2019 IL App (1st) 170915, ¶ 49). The administrative law judge had ample opportunities to observe Gracie's demeanor and assess her credibility, as Gracie's testimony spans 74 pages in the transcript. The judge stated that she did not find that any minor inconsistencies in Gracie's testimony undermined her credibility and that she further found Gracie's testimony to be credible, with one possible exception not relevant here. See *supra* ¶ 17 n.1. Citing its own internal precedents, the Labor Board stated in its opinion and order that it accepted the administrative law judge's credibility determinations. The School District has presented no solid justification for us to reject the Labor Board's disposition of the dispute regarding Gracie's credibility.

¶ 39 The School District also argues that the evidence regarding Grand's statements was inadmissible hearsay. We review an administrative agency's admission of evidence for abuse of discretion. *Danigeles v. Illinois Department of Financial &Professional Regulation*, 2015 IL App (1st) 142622, ¶ 82. The Labor Board's administrative rules require that, in contested cases, it must follow "the rules of evidence as applied in the court of Illinois pertaining to all civil actions." The same rule goes on to provide the following: "In addition, the Hearing Officer will receive evidence which is material, relevant, and would be relied upon by reasonably prudent persons in the conduct of their affairs provided that the rules relating to privileged communications and privileged topics shall be observed." 80 Ill. Adm. Code 1105.190(a) (2017).

¶ 40 The Illinois Rules of Evidence prohibit admission of a hearsay statement, defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); see also Ill. R. Evid. 802 (eff. Jan. 1, 2011). When it rejected the School District's contention of error on this issue, the Labor Board found that the statement was admissible because it was an admission against interest by a party opponent, and thus fell outside the scope of the hearsay rule. We agree. Illinois Rule of Evidence 801(d)(2)(D) (eff. Oct. 15, 2015) provides that a statement is not hearsay and is thus admissible if it "is offered against a party and is *** (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." See *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1065 (2001). Grand was employed by the School District at the time he made the statement at issue. He supervised the custodians, including Gracie. He made the statement during a discussion of custodian work assignments with Gracie. Therefore, Grand's statement was admissible under Rule 801(d)(2)(D) as an admission against the School District as a statement by an employee made during his employment relationship with the School District and made within the scope of his employment. Therefore, this contention is without merit.

¶ 41 Relatedly, and as the final prong of its third assignment of error, the School District argues that the Labor Board improperly imputed Grand's statement to the School District itself through an agency theory. The School District points out that Grand was not a decision-maker with respect to Gracie's termination. The Labor Board concluded that the statements were

attributable to the School District on an agency basis, but, in a footnote to that conclusion, it cited the rule regarding admissions against interest.

¶ 42    The applicability of Rule 801(d)(2)(D) does not depend on whether the party's "agent or servant" was specifically authorized to make the statement on behalf of a principal. Rather, under the rule, a statement is admissible as an admission against interest of a party merely because it was made by an agent or servant, "concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Ill. R. Evid. 801(d)(2)(D) (eff. Oct. 15, 2015). No specific authorization is required. The fact that Grand was not a final decision-maker regarding Gracie's discipline is irrelevant. The Illinois Rules of Evidence were modeled after the federal rules of evidence, and this court has looked to case law regarding those rules, and case law from other states that modeled their evidence rules on the federal rules, for guidance when interpreting the Illinois rules. *People v. Neal*, 2020 IL App (4th) 170869, ¶ 130. As this court has explained:

> "The modern trend in Illinois case law seemingly rejects the traditional agency approach in favor of the scope of employment approach espoused by Rule 801(d)(2)(D) of the Federal Rules of Evidence (Fed. R. Evid. 801(d)(2)(D)), which provides that statements by an employee concerning a matter within the scope of her employment constitute admissions by her employer if the statements are made during the existence of the employment relationship." (Internal quotation marks omitted.) *Pietruszynski v. McClier Corp.*, *Architects & Engineers, Inc.*, 338 Ill. App. 3d 58, 65 (2003).

Accord *Pavlik*, 323 Ill. App. 3d at 1065.

¶ 43    In light of this authority, we are not left with the "definite and firm conviction" that the Labor Board's decision to attribute his comment to the School District was a mistake. We therefore find that the Labor Board's determination to impute Grand's statement to the School District was not clearly erroneous.

¶ 44    The School District's next assignment of error concerns Coreas's prior discipline, and it contains two prongs. It contends that evidence regarding the prior discipline of Coreas was inadmissible. It also argues that the Labor Board improperly determined that the prior discipline constituted disparate treatment and thus supported its ultimate finding that the School District's stated justification for terminating Gracie was pretextual.

¶ 45    We begin with the admissibility of the evidence. Evidence of Coreas's discipline came into the record through a February 2014 letter on School District letterhead from Grand to Coreas which bore Grand's signature. Dudzik, the School District's assistant superintendent for human resources, identified the letter and stated that he recognized it. It was admitted as an exhibit over the School District's objection. It stated in relevant part as follows:

> "On [date and time], you were seen by a district administrator taking two bags of salt from the Nathan Hale Intermediate boiler room and loading them into your car. On [*sic*] our meeting on February 12, 2014, you admitted to taking the salt. You also said Nick DeAlba, the night custodian, gave you permission to borrow the salt. Nick DeAlba does not have the authority to let you take SD 130 property. This is a written reprimand to let you know your actions will not be tolerated. If you continue not to adhere to SD 130 policy you will be facing suspension and/or termination."

¶ 46    The School District makes no real attempt to dispute the authenticity of the letter, other than that Grand himself was not called to testify regarding it. Even so, the letter had ample

indicia of reliability and authenticity: it was on school letterhead and Dudzik testified that he recognized it as being signed by Grand, who was Gracie's supervisor.

¶ 47     The School District nonetheless contends that the letter had insufficient disciplinary information to serve as evidence of disparate treatment. We disagree.

¶ 48     Reading the letter in light of the entire record (including Gracie's testimony that the employee was neither a union steward nor involved in union activities or grievances), it was sufficient to be used as evidence of disparate treatment. It necessarily follows that the letter was properly admitted over the School District's hearsay objection as an admission by a party opponent. Ill. R. Evid. 801(d)(2)(D) (eff. Oct. 15, 2015).

¶ 49     We next review the second prong of the School District's fourth assignment of error. The Labor Board determined that Gracie and Coreas were similarly situated—indeed, they had the same position—and engaged in similar conduct. It also found that the record was replete with evidence of Gracie's union activities, which set her apart from Coreas, who was not a union official. Based on these findings, the Labor Board found that the stated reasons for Gracie's firing were pretextual. In urging reversal of the Labor Board's determination regarding pretext, the School District relies almost exclusively on its argument that the letter was inadmissible, an argument that we have rejected. It also cursorily contends that the administrative law judge's conclusion that Coreas's own past disciplinary record could not have been "more stellar" than Gracie's was improperly speculative because no evidence regarding his record was admitted. Even so, we do not find that this comment created reversible error. We review the Labor Board's decision, not the administrative law judge's decision. The Labor Board's decision mentions Gracie's unblemished record to contrast her with Coreas but does not mention the administrative law judge's presumption regarding Coreas's record. Therefore, we find no basis to reverse on this ground.

¶ 50     We next address the School District's fifth assignment of error. The School District contends that the Labor Board erred by relying on the testimony of Tagler, a former teacher, who said she told Gracie to take supplies that she needed if the teacher was not around. The Labor Board found Tagler's testimony provided additional support for its conclusion that the School District's actions were pretextual.

¶ 51     The School District does not dispute the truth of Tagler's testimony but contends, without citation to authority, that it was irrelevant because it had "no similarity to this matter." Again, we disagree. At the very least, Tagler's testimony was relevant to buttress Gracie's credibility. It also demonstrated custom and practice with respect to the occasional use of teacher supplies by custodians. Therefore, the admission of this testimony was not an abuse of discretion.

¶ 52     As its sixth assignment of error, the School District contends that the Labor Board erred in relying on the testimony of Haberkorn to support its finding that the School District's actions were pretextual. Haberkorn expressed distress over her role in Gracie's firing, and she was sufficiently agitated when testifying that the administrative law judge made special note of her flat affect and her breakdown into tears, two things that would not necessarily be reflected in the cold transcript. The judge also found that Haberkorn's reaction to the ultimate result of her complaint about Gracie was relevant to the analysis of the disparate severity of Gracie's discipline. The School District contends, again without citation to authority, that Haberkorn was not a decision-maker, so her opinion regarding the level of appropriate discipline is irrelevant.

¶ 53      Again, we find no error. Gracie was terminated for taking property from the supply cabinet in Haberkorn's classroom. Had Haberkorn never brought the matter to the attention of the principal, no one else in the School District would have ever become aware of it. The School District has taken the position that Gracie's actions constituted "theft in the school setting," which was "an extreme breach of trust." Since Haberkorn used the supply closet to store materials she used to assist students in her classroom, Haberkorn's own beliefs regarding the severity of harm caused by Gracie's taking of the zip-top bags, and her reaction to its aftermath, were relevant. They supported Gracie's argument that her conduct caused no harm to the School District or its educational mission and therefore did not merit termination. We find no error in the Labor Board's consideration of Haberkorn's testimony.

¶ 54      For these reasons, we reject the School District's first six assignments or error and thus affirm the Labor Board's disposition of the first unfair labor practice charge.

¶ 55      We next turn to the Labor Board's order on the second unfair labor practice charge, in which the Labor Board held that the School District committed an unfair labor practice by refusing to arbitrate Gracie's grievance. As its seventh contention of error, the School District urges that it was not obligated to arbitrate the grievance because of the election of remedies clause in the union contract. The election of remedies clause provides:

> "In the event a member of the bargaining unit commences a proceeding in any State or Federal court or administrative agency against the [School] Board and/or Superintendent and his/her administrative staff with an alleged violation of any of the terms of this Agreement, such remedy shall be exclusive and the said member of the bargaining unit shall be barred from invoking any formal remedy provided by this Grievance Procedure, along with an obligation not to pursue such an alternative after a final decision has been rendered as per the terms of the preceding grievance procedure."

¶ 56      The Labor Board found that the term "member" in the election of remedies clause was clear because it indicated the employee rather than the union or a union representative acting on behalf of an employee's interests. Since the union, rather than Gracie, filed the unfair labor practice charge, the Labor Board determined that the election of remedies clause did not apply.

¶ 57      The School District contends that the Labor Board's interpretation of the clause leads to an absurd result because an employee and her union could force the School District to litigate the same issue simultaneously in two different forums—before the Labor Board itself (in the context of an unfair labor practice charge) and before an arbitrator. It also relies on *Board of Trustees v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 409 (1988) (*Prairie State*), for the proposition that "refusal to arbitrate an educational labor dispute does not constitute an unfair labor practice." The School District notes that, as stated by our supreme court in *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 20, refusal to arbitrate is an appropriate method to challenge arbitrability.

¶ 58      We find these arguments are not meritorious. The School District's reliance on *Prairie State* is misplaced. The full quote from the case is: "In conformity with our recent decision in *Board of Education* [*of the City of Chicago*] *v. Illinois Educational Labor Relations Board*, [170 Ill. App. 3d 490 (1988)], we hold, however, refusal to arbitrate an educational labor dispute does not constitute an unfair labor practice *under section 14(a)(5)* [of the Act]." (Emphasis added.) *Prairie State*, 173 Ill. App. 3d at 409. The union here did not claim that the School District committed an unfair labor practice under section 14(a)(5) of the Act but rather

- 13 -

under sections 14(a)(1) and 14(a)(3) of the Act. In fact, just a few lines before the quote upon which the School District relies, the *Prairie State* court specifically stated: "An employer's refusal to arbitrate a grievance obviously interferes with and restrains a grievant in the exercise of a right guaranteed under the Act within the meaning of section 14(a)(1)." *Id.* In *Board of Education of the City of Chicago*, the supreme court cited *Prairie State* with approval, holding: "A school district's refusal to submit an employee grievance to binding arbitration under a collective bargaining agreement is a violation of section 14(a)(1) of the Act." *Board of Education of the City of Chicago*, 2015 IL 118043, ¶ 20.

¶ 59      When construing a contract, our primary objective is to give effect to the intention of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). We look first to the language of the contract itself to discern the parties' intent. *Id.* at 233. If the contract language is clear and unambiguous, it must be given its plain, ordinary, and popular meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). The entire election of remedies clause depends on an opening condition being true. It only applies when "a member of the bargaining unit commences a proceeding." Since no member of the bargaining unit filed the charge, the clause did not bar the normal procedure under which the grievance relating to Gracie's termination would be arbitrated. The parties offer differing opinions on whether allowing the same dispute to be litigated in two different forums is absurd. Regardless, it is not unfair to hold the parties to the language that they drafted and negotiated.

¶ 60      We thus reject the School District's contention that the Labor Board erred in finding that the School District committed an unfair labor practice under section 14(a)(1) of the Act by refusing to arbitrate the grievance.

¶ 61                                        CONCLUSION

¶ 62      Having rejected all seven of the School District's assignments of error, we affirm the Labor Board's order sustaining the unfair labor practice charges and granting other relief against the School District.

¶ 63      Affirmed.