# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Metropolitan Property & Casualty Insurance Co. v. Stranczek*, 2012 IL App (1st) 103760

---

| | |
|---|---|
| Appellate Court Caption | METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, as Successor in Interest on Certain Policies of Insurance to St. Paul Insurance Company of Illinois, and ECONOMY PREMIER ASSURANCE COMPANY, Plaintiffs-Appellants, v. CHESTER STRANCZEK, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-3760 |
| Filed | March 30, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In plaintiff insurers' action seeking a declaratory judgment that they did not have a duty to defend or indemnify defendant in underlying lawsuits alleging that the village of which defendant was the mayor distributed contaminated water to its citizens, the entry of summary judgment for defendant was reversed, since the policy issued to defendant covered liability for third-party claims, homeowner's claims, and vehicle and boat claims, but excluded coverage for claims connected to a "business, profession or occupation" of the insured, and defendant's position as mayor constituted an "occupation" for purposes of the policy, the lawsuits involved risks defendant undertook on behalf of the village, and the exclusion applied; therefore, summary judgment was entered for plaintiff insurers. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-35410; the Hon. Richard J. Billik, Jr., Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed; summary judgment entered. |
| Counsel on Appeal | Joseph P. Postel, David S. Osborne, and Jeffrey A. Merar, all of Lindsay, Rappaport & Postel, LLC, for appellants. |
| | Chris C. Gair, Christopher C. Dickinson, Irina Y. Dmitrieva, and Matthew S. Riley, all of Jenner & Block LLP, of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. |
| | Presiding Justice Epstein and Justice J. Gordon concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiffs brought an action for declaratory judgment against their insured, defendant Chester Stranczek, seeking a declaration that they did not owe a duty to defend or indemnify him in several underlying lawsuits alleging that the Village of Crestwood, of which defendant was the mayor, and its municipal officers supplied its residents with contaminated drinking water. Plaintiffs claimed that they did not owe a duty to defend or indemnify Stranczek because of a "business pursuits" coverage exclusion contained in the insurance policies that Stranczek purchased from plaintiffs. On cross-motions for summary judgment, the trial court found that the underlying lawsuits fell within the coverage provided by the insurance policy and that plaintiffs owed a duty to defend Stranczek in those lawsuits. The trial court granted summary judgment in favor of Stranczek, and plaintiffs now appeal that judgment. For the reasons that follow, we reverse.

¶ 2    The relevant facts in this case are not in dispute. According to an unrebutted affidavit submitted by Stranczek's wife, Diane, that was attached to Stranczek's motion for summary judgment, Stranczek served as the mayor of the Village of Crestwood (Village) from 1969 to 2007. The job of mayor was a part-time position that initially paid Stranczek $1,000 per year and never paid him more than $6,000 per year. Stranczek did not retain any of that salary as compensation for his service as mayor. Instead, he donated the after-tax portion of that salary for charity, used it for projects benefitting the Village, and used it to defray his own out-of-pocket expenses incurred as mayor because he did not have an expense account. For many years, Stranczek was the president and chief executive officer (CEO) of two companies: Cresco Lines, Inc., a nationwide trucking company, and Chicago Marmon Trucks, Inc., a company operating maintenance facilities for tractors and trailers. Stranczek resigned as CEO of Chicago Marmon Trucks on August 8, 1994, and turned over day-to-day management of the company to one of his sons. Stranczek resigned as CEO of Cresco Lines

on July 10, 1995, and turned over day-to-day operations of the company to another one of his sons. After these resignations, Stranczek continued to serve as chairman of the board of both companies until he resigned that position at Cresco on July 13, 2009, and at Marmon on August 10, 2009. In his role of chairman, Stranczek was closely involved in overseeing the companies' finances and overall operations until his medical condition started to deteriorate in 2008. Between 1984 and at least 1991, Stranczek received a salary of more than $100,000 for his work at both companies. Beginning in 1998, Stranczek was compensated principally through distributions from the companies, and although those distributions varied from year to year, they were never less than $189,000 and were frequently much more.

¶ 3      The pleadings and other evidentiary materials in the record reveal the following additional undisputed facts. From October 1995 through October 2009, Stranczek purchased and renewed, on an annual basis, "PAK II Personal Package" insurance policies from St. Paul Insurance, its successor in interest Metropolitan Property and Casualty Insurance Company, and Economy Premier Assurance Company. Each of the policies was issued under the trade name "PAK II" and contained substantially the same terms and conditions.[1] Therefore, for purposes of this appeal, the policies will be referred to collectively as the PAK II policies.

¶ 4      Each PAK II policy provides primary liability coverage in a section entitled "Personal Liability Coverage," and additional liability coverage in a section entitled "Personal Umbrella Liability Endorsement." The "General Policy Information" section describes the PAK II policy as a "new kind of policy" that provides "broad personal protection." It further states that PAK II provides "all the personal coverage you may need" in that it combines several types of insurance coverage, including personal liability for third-party claims, homeowners property insurance, and vehicle and boat coverage. The "Legal Liability Protection" provides that under the PAK II policy, "[the insured is] covered when someone makes a claim against [him or her]." The section further states that the PAK II policy will "cover [the insured's] legal liability resulting from an occurrence in which there is actual accidental property damage, personal liability or death, anywhere in the world, subject to the limitations and exclusions" in the policy. The policy defines an "occurrence" as "an event, including continuous or repeated exposure to the same conditions, resulting in personal injury or property damage neither expected nor intended by anyone insured by PAK II."

¶ 5      The PAK II policies contain the following coverage exclusion, referred to by the parties as the "business pursuits" exclusion:

"PAK II doesn't cover accidents happening on your business premises. And we do not cover any liability or claims connected with your business, profession or occupation. For example, malpractice claims. But we do cover business use of the private passenger automobiles listed in the Coverage Summary. Other coverage for incidental business

---

[1]The parties do not dispute that there is no substantive difference between the relevant provisions of the insurance policies.

liability is further explained *** under 'Incidental Business Liability.' "[2]

¶ 6 The record further shows that in 2009, a series of lawsuits were filed by Crestwood residents against the Village and its municipal officers, including its former mayor, Stranczek. Those lawsuits alleged that in the late 1980s, the Environmental Protection Agency (EPA) advised Village officials, including Stranczek, that its tap water was contaminated with toxic chemicals, including a dry-cleaning solvent, that were linked to cancer and other health problems. Village officials told the EPA that it was obtaining its tap water from Lake Michigan and that the contaminated well tap water would only be used in an emergency. The Village placed its well water on "emergency backup" status to avoid tests for chemical pollutants and assured its residents that the drinking water was safe and obtained exclusively from Lake Michigan. Stranzcek, as the mayor and the "official custodian" of the Village's water supply, signed and certified reports given to consumers and the EPA stating that Crestwood's water was safe and purchased indirectly from the City of Chicago, which drew its water from Lake Michigan. Despite these assurances, the Village, in an effort to save money, continued to draw water from the contaminated well and relied upon that water for up to 20% of the Village's water supply. The complaints alleged that Stranczek, as mayor and official custodian of the Village's water, knew of and participated in the decision to draw water from the contaminated well and to supply that water to the Village's residents and businesses. The complaints alleged that residents suffered personal injury, death, and/or property damage due to use or ingestion of the contaminated water, including but not limited to breast cancer, stomach cancer, and lymphoma. The lawsuits asserted causes of action for negligence, wrongful death, willful and wanton misconduct, fraud, and public nuisance. The State of Illinois also filed a lawsuit alleging a number of statutory violations based upon the failure to provide Crestwood residents with safe drinking water.

¶ 7 Stranczek notified the insurers of the underlying lawsuits and requested that they defend and indemnify him. The insurers refused to do so and instead filed the present declaratory judgment action. As relevant to this appeal, the insurers alleged that the Village "contracted with one or more insurance companies to provide Public Officials Liability insurance coverage" during the relevant time periods and that these policies were intended to apply to liability asserted against Stranczek "for his acts or omissions within the scope of his duties" as mayor. The insurers further alleged that the parties intended the PAK II policies to be mutually exclusive to the coverage provided by the Village's public officials liability insurance policies. Finally, the insurers alleged that they had no duty to defend or indemnify Stranczek in the underlying lawsuits based upon the "business pursuits" coverage exclusion contained in the PAK II policies.

¶ 8 Stranczek responded by filing a counterclaim and a partial motion for summary

---

[2]The "Incidental Business Liability" section states that the insured is "not covered for claims that arise from occurrences on your business premises. 'Business Premises' is any property used in a business or rented for a profit. But we do cover your liability for one-, two-, three- and four-family dwellings that you own and rent to others, as long as the renters don't use it for a business purpose."

judgment, asserting a claim for breach of contract by the insurers and seeking a declaration that the insurers were obligated to defend him in the underlying lawsuits. The insurers responded to the counterclaim and filed a cross-motion for summary judgment, arguing that they did not owe a duty to defend or indemnify Stranczek in the underlying lawsuits because of the "business pursuits" coverage exclusion in the PAK II policies.

¶ 9 Following a hearing, the trial court granted Stranczek's motion for partial summary judgment and denied the insurers' cross-motion for summary judgment. The court found that under Illinois law, a business pursuit must involve a "continuous or regular activity done for the purpose of returning a profit." The court further noted that the only evidentiary submission in the case was offered by Strancek and consisted of an affidavit from his wife, Diane, which was not contradicted in substance or challenged as to admissibility by the insurers and therefore had to be taken as true for purposes of summary judgment. The court found that considering the allegations in the underlying complaints, the language of the "business pursuits" exclusion, and the uncontradicted facts in the submitted affidavit, the insurers had failed to establish that the exclusion applied to preclude coverage because there was no evidence that Stranczek had a profit motive or economic consideration in serving as mayor. Accordingly, the court found that the insurers had a duty to defend Stranzcek in the underlying lawsuits and also found that there was no just reason to delay enforcement or appeal of the court's ruling. The issue of whether the insurers owed a duty to indemnify Stranczek for any judgment that may be entered against him in the underlying lawsuits was stayed pending the resolution of those suits. This appeal followed.

¶ 10 The insurers contend that the trial court erred by entering summary judgment in favor of Stranczek. They claim that the "business pursuits" exclusion applies to his former position as mayor and that they therefore do not owe a duty to defend Stranczek in the underlying lawsuits.

¶ 11 "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998). Where, as in this case, the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law. *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339 (2005).

¶ 12 To determine whether an insurer is obligated to defend its insured, we generally compare the allegations of the underlying complaint to the relevant provisions of the insurance policy. *Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 738 (1999). "If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *Northbrook Property & Casualty Co. v. Transportation Joint*

*Agreement*, 194 Ill. 2d 96, 98 (2000). The threshold for pleading a duty to defend is low, and any doubt with regard to such duty is to be resolved in favor of the insured. *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 963 (2005).

¶ 13    The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." *Dare*, 357 Ill. App. 3d at 963-64.

¶ 14    The insurer has the burden of demonstrating that a claim falls within a provision of the policy that excludes coverage, and an exclusion relied upon to deny coverage must be "free and clear from doubt." *Clarendon America Insurance Co. v. B.G.K. Security Services*, *Inc.*, 387 Ill. App. 3d 697, 705 (2008). "Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer." *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006).

¶ 15    The insurers contend that summary judgment in favor of Stranczek was improper. They claim that the coverage exclusion applies because Stranczek's former position as mayor of Crestwood was a "business, profession or occupation" and because the PAK II policies were not intended to insure against the type of risks and acts alleged in the underlying complaints. Stranczek, on the other hand, contends that there is no dispute that the allegations in the underlying complaints allege facts that are potentially within the coverage provided by the PAK II policies and that the facts set forth in his wife's affidavit conclusively establish that his former position of mayor was not a "business, profession or occupation" such that the coverage exclusion does not apply and the insurers are required to defend him in the underlying lawsuits.

¶ 16    As set forth above, the PAK II policies contain what the parties refer to as a "business pursuits" coverage exclusion, which states that the insurance policy does not cover any liability or claims connected with the insured's "business, profession or occupation." The Pak II policies do not define what is meant by "business, profession or occupation." Nevertheless, Illinois courts have interpreted homeowners insurance policies that contain a "business pursuits" exclusion in which a business pursuit was defined as a "trade, profession or occupation." These cases have defined a business pursuit as a "continuous or regular activity, done for the purpose of returning a profit." *Badger Mutual Insurance Co.v. Ostry*, 264 Ill. App. 3d 303, 308 (1994); see also *Industrial Indemnity Co. v. Vukmarkovic*, 205 Ill. App. 3d 176, 182 (1990); *Insurance Co. of Illinois v. Markogiannakis*, 188 Ill. App. 3d 643, 655 (1989); *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d 250, 252 (1981).

¶ 17    Stranczek argues that his wife's affidavit conclusively establishes that his service as mayor was not a trade, business or occupation. He claims that the affidavit establishes that

his primary income was from his work in the trucking companies, that he worked only part-time as mayor, that he received between $1,000 and $6,000 a year as a salary for that work, and that he did not retain any of that salary for his own benefit or pecuniary gain.

¶ 18 We disagree with Stranczek's contention and find, for the reasons set forth below, that his former position of mayor was an "occupation" within the meaning of the PAK II policies. The coverage exclusion is written in the disjunctive and therefore the coverage exclusion applies if Stranczek's potential liability arose from a business, profession *or* occupation. The very nature of Stranczek's position as mayor indicates that he was engaged in an "occupation." As the mayor of Crestwood, he was the elected governmental leader of a town who performed numerous official acts in that capacity. One of these responsibilities was the official custodian of the Village's water supply, and in this capacity, he purchased and certified the safety of the Village's water supply. His position of mayor was an activity that he pursued on a "continuous and regular" basis because he was occupied as the mayor of Crestwood for 38 years. His position also satisfies the profit requirement because for 38 years he was compensated for his work as mayor in the form of a yearly salary of between $1,000 and $6,000. Based upon these undisputed facts, we find that Stranczek's position of mayor was a continuous and regular activity for which he received a profit. The position of mayor was thus an "occupation" and to characterize it otherwise is contrary to any reasonable understanding of the term's meaning.

¶ 19 The facts set forth in the affidavit of Stranzcek's wife do not compel a conclusion to the contrary. The fact that the position of mayor was part-time and that he received his primary income from the trucking companies does not mean that it was not an occupation because even a part-time or supplemental income activity is a business pursuit if it is a continuous or regular activity done for the purpose of earning a profit. See, *e.g.*, *Badger Mutual Insurance Co.*, 264 Ill. App. 3d at 308; *Moore*, 103 Ill. App. 3d at 252 (paid baby-sitting in one's home on a regular, continuous basis). As this court has recognized, "[i]t is not uncommon for an insured to have a business in addition to his regular and customary occupation which he may pursue primarily or even wholly for purposes other than pecuniary gain; but such collateral business would nonetheless constitute a business or an occupation while so pursued." *Allstate Insurance Co. v. Hoffman*, 21 Ill. App. 2d 314, 319 (1959). Moreover, the fact that Stranczek gave his yearly salary away does not convert his position of mayor into anything other than an occupation. We accept as true that Stranczek either donated the after-tax portion of his salary to charity, used it for projects benefitting the Village or used it to defray his own out-of-pocket expenses. These facts do not establish that Stranczek did not receive a salary or a profit for his work as mayor but, instead, they simply illustrate how he chose to spend that salary or profit. There are numerous people who are engaged in a profession, business or occupation who donate portions of their salary to charity but this does not mean that they were not paid or did not receive a profit for their work. The same is true in this case, and Stranczek cites no authority indicating that a person can change the terms or applicability of an insurance policy based upon the way that person spends the money he or she earns.

¶ 20 Our conclusion that Stranczek's position of mayor was an "occupation" becomes all the more clear when considered in context of the terms of the PAK II policies and the allegations in the underlying complaints. Initially, we do not agree with Stranczek's statement that there

-7-

is no dispute in this case that the allegations in the underlying complaints fall within the terms of the PAK II policies. Nor do we agree that the only issue is the applicability of the coverage exclusion. This is too narrow a reading of the issues in this case. Insurance policies are construed as a whole, and we must consider the type of insurance for which the parties contracted and the purpose of the contract. Therefore, we do not consider the meaning of the coverage exclusion by itself but, instead, in context of the entire policy and the risks it was intended to protect against. Viewed in this manner, the type of risks covered by the policy must be informed by the risks that are not intended to be covered and, more importantly in this case, the type of risks intended to be excluded from the policies must be informed by the risks that are intended to be covered. Thus, the fact that the insurers focus their arguments on the applicability of the coverage exclusion does not amount to a concession that the allegations in the complaint otherwise fall within the coverage provided by the policies. Instead, the insurers' argument is that the type of risks alleged in the complaints are not covered by the terms of the policy and instead are expressly excluded by the coverage exclusion. Moreover, as a court of review, we are not bound by a party's concessions (*People v. Horrell*, 235 Ill. 2d 235, 241 (2009)) and, as a reminder, we review the granting of summary judgment under a *de novo* standard of review (*Ragan*, 183 Ill. 2d at 349).

¶ 21    When the PAK II policies are construed in this manner, it is evident that they were not intended to insure against the type of risks alleged in the underlying complaints. There is no dispute that the policies have a significant homeowners insurance component and that they provide protection against personal liability "anywhere in the world," including protection against liability for third-party claims, homeowners property insurance, and vehicle and boat coverage. On the other hand, the policies exclude coverage for accidents happening on the insured's business premises and they do not cover liability for claims connected to a "business, profession or occupation" of the insured. Thus, the policies clearly delineate the type of risks that are intended to be covered and those that are not. The policies cover liability arising from personal risks that are taken anywhere in the world by the insured and they do not insure against occupational or business-related risks.

¶ 22    There is no dispute that Stranczek committed all of the acts alleged in the underlying complaints in his capacity as mayor and on behalf of the Village. The Village was responsible for distributing water to its residents and Stranczek was sued in the underlying complaints in his capacity as mayor and as the official custodian of the Village's water supply. The complaints allege that in that capacity and on behalf of the Village, Stranczek was warned of the contaminated water but nevertheless continued to supply residents with the water and also falsely assured residents and the EPA that the contaminated water was not being used. Although insurance policies are interpreted broadly and exclusions are interpreted narrowly, it would be an unreasonable interpretation of the policy to hold that the parties intended the PAK II policies to cover liability based upon large distributions of contaminated water to residents by the mayor and official custodian of the water supply of the Village of Crestwood. These are not personal risks that Stranczek undertook but instead they are occupational risks that he took on behalf of the Village. See *Vukmarkovic*, 205 Ill. App. 3d at 184-85, 187 (stating that when deciding the applicability of a business pursuits exclusion, a "court must look to the purpose the insured was pursuing, or the nature of his

-8-

activities, at the time of the incident that gives rise to a claim for insurance").

¶ 23    For the reasons discussed above, we conclude that Stranczek's position as mayor was an "occupation" within the meaning of the coverage exclusion in the PAK II policies. Accordingly, the coverage exclusion applies to the acts giving rise to the underlying lawsuits and the insurers are not required to defend Stranczek in those lawsuits.

¶ 24    For the foregoing reasons, the judgment of the circuit court of Cook County granting summary judgment in favor of defendant is reversed and summary judgment is entered in favor of plaintiffs.

¶ 25    Reversed; summary judgment entered.