2022 IL App (1st) 220076

SECOND DIVISION
December 27, 2022

No. 1-22-0076

| | | |
|---|---|---|
| JOSIP PASIC, M.D., | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF FINANCIAL AND | ) | No. 20 CH 005814 |
| PROFESSIONAL REGULATION, and CECILIA | ) | |
| ABUNDIS, in Her Official Capacity as Acting | ) | |
| Director of Financial and Professional | ) | |
| Regulation, | ) | |
| | ) | Honorable Pamela M. Meyerson, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment and opinion.

OPINION

¶ 1     Plaintiff Josip Pasic, M.D. appeals from the circuit court's order, upholding a final administrative decision made by defendant the Department of Financial and Professional Regulation (Department), denying Dr. Pasic's petition to restore his medical license following a period of suspension. Dr. Pasic filed a complaint for administrative review of the Department's decision in the circuit court of Cook County. Dr. Pasic argues that the decision was clear error. Dr. Pasic also alleged the Department deprived him of due process when the Administrative Law Judge (ALJ), after the hearing on the petition, raised *sua sponte* the issue of Dr. Pasic's clinical competency in his written decision, which was not raised by either party. The ALJ determined that Dr. Pasic failed to demonstrate clinical competency as required by section 1285.130 of title

68 of the Illinois Administrative Code, which requires doctors who have been unlicensed for more than three years to demonstrate medical competency before the license is reinstated. See 68 Ill. Adm. Code 1285.130(c) (2007). Dr. Pasic argued that the section 130 requirement is not at issue and it is premature to apply the requirements to his petition for restoration of a license after a suspension. The circuit court upheld the Department's decision to deny Dr. Pasic's petition for the restoration of his medical license. Dr. Pasic now appeals. For the following reasons, we reverse and remand for a new administrative hearing.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff Dr. Josip Pasic is a psychiatrist who has been licensed in Illinois for more than 40 years. For most of his career, Dr. Pasic has provided psychiatric services to patients in low income and socioeconomically disadvantaged populations. He provided services to a number of patients who were criminals, drug addicts, and gang members. Dr. Pasic was employed by Circle Family Healthcare Network and also provided some services at a nearby hospital.

¶ 4     Five patients treated by Dr. Pasic between 2006 and 2012 made allegations that he had made sexual comments or sexual advances towards them. The patients filed a joint civil suit against Dr. Pasic, and the allegations were also investigated by the Office of the Inspector General for the Illinois Department of Human Services (Inspector General). In light of the allegations, Dr. Pasic was suspended indefinitely from practicing at Circle Family Healthcare.

¶ 5     The Inspector General's investigation concluded that four of the five claims against Dr. Pasic were unsubstantiated but that one of the five claims was substantiated. The separate civil suit against Dr. Pasic was dismissed.

¶ 6     Department filed a complaint against Dr. Pasic in December 2015. Dr. Pasic had no previous discipline against his medical licenses. The Department's complaint included

allegations of misconduct against Dr. Pasic for improper sexual conduct and remarks during his treatment of four male patients. The Department also alleged in the complaint that Dr. Pasic failed to disclose the Inspector General's investigation when he submitted his 2013 credentialing application to St. Mary and St. Elizabeth Medical Center and that he failed to disclose his suspension from Circle Family Healthcare when he submitted his 2014 application to renew his physician's license.

¶ 7     After the Department filed its initial complaint, it learned from the U.S. Drug Enforcement Administration (DEA) that the DEA was investigating Dr. Pasic for sexually inappropriate conduct and for improperly prescribing controlled substances. After learning the information from the DEA, the Department filed an amended complaint against Dr. Pasic that included additional claims of sexual misconduct, along with new claims for improper prescribing practices with regard to controlled substances. The Department later filed a second amended complaint that included more details about Dr. Pasic's allegedly improper prescribing practices, along with a claim that Dr. Pasic assisted a DEA informant with attempting to obtain Social Security benefits for which the patient did not qualify.

¶ 8     Before the disciplinary hearing took place, a consent order was entered by agreement of the parties. The consent order stipulated that Dr. Pasic neither admitted nor denied the allegations against him, but that, if the matter went to a hearing, violations of the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/1 *et seq.* (West 2020)) might be found. Dr. Pasic accepted an indefinite suspension of his medical licenses for a minimum of two years. Thus, Dr. Pasic was entitled to petition for a restoration of his medical licenses once the minimum two-year term of suspension had been served.

¶ 9    In May 2019, following the minimum two-year suspension period, Dr. Pasic petitioned the Department to restore his medical licenses. An administrative law judge presided over a hearing on Dr. Pasic's petition in which Pasic himself and other witnesses testified. Documentary evidence was also admitted. The witnesses testified that Dr. Pasic had engaged in constructive activities related to his profession during his suspension and described the positive community services he was performing. The witnesses testified, and Dr. Pasic argued, that the restoration of his medical privileges would be in the best interest of the public, his patients, and the people of Illinois.

¶ 10    Following the hearing, the ALJ filed his report and recommendation to the Medical Disciplinary Board (Disciplinary Board). The ALJ's recommendation was to deny Dr. Pasic's petition for the restoration of his medical licenses. The ALJ made a finding that Dr. Pasic had "not demonstrated by a preponderance of the evidence that he has been sufficiently rehabilitated to warrant the public trust at this time." The ALJ found that certain medical competency requirements applied to the restoration proceeding and that Dr. Pasic failed to demonstrate compliance with the medical competency requirements. See 68 Ill. Adm. Code 1285.130(c) (2007). The regulation set forth in section 1285.130 provides that if a license is expired or inactive for more than three years, the licensee must complete 150 hours of continuing education along with at least one other enumerated form of evaluation that would demonstrate competency. *Id.* The ALJ found that

> "the requirements of section 1285.130 are applicable to this Respondent and the ALJ has
> no authority to waive the proofs required by section 1285.130. Although Respondent
> filed his Petition for hearing, and the formal hearing was completed, prior to Petitioner
> being suspended for over three years, there is no tolling language in the statute."

¶ 11    The Disciplinary Board reviewed the record and made findings, conclusions, and a recommendation to the Director of Financial and Professional Regulation (Director). The Board adopted the ALJ's findings and conclusions and recommended that Dr. Pasic's petition be denied. The Director issued a final administrative decision adopting the Board's findings and conclusions. The Director accepted the Board's recommendation and denied Dr. Pasic's petition to restore his medical licenses. Like the ALJ, the Director found that the medical competency requirements applied to Dr. Pasic's restoration proceeding and Dr. Pasic had not shown sufficient rehabilitation to warrant restoration of his medical licenses.

¶ 12    Dr. Pasic filed a complaint in the circuit court for administrative review of the final administrative decision. Dr. Pasic disputed the allegations of sexual misconduct and contends that he has never made any advances or sexually inappropriate comments towards any patient. Dr. Pasic argued to the circuit court that he was denied due process during the administrative proceeding. Dr. Pasic argued the ALJ denied him the opportunity to dispute the allegations of the underlying complaint. Dr. Pasic also argued that the regulation in section 1285.130(c), pertaining to clinical competency, does not apply to restoration from suspension and applies only to expired or inactive licenses. Therefore, he argued he was prejudiced when the IDFPR considered clinical competency when it denied his restoration petition. He also argued to the circuit court that the denial of his petition to restore his medical licenses was against the manifest weight of the evidence. The circuit court upheld the administrative decision. The circuit court found that Dr. Pasic was not denied due process in the administrative proceedings and that the final administrative decision to deny the restoration petition was not an abuse of discretion. Dr. Pasic filed this appeal asking us to reverse the IDFPR's final administrative decision.

¶ 13                                    II. ANALYSIS

¶ 14                         A. Dr. Pasic's Statement of Facts

¶ 15    The Department argues that the statement of facts in Dr. Pasic's appellate brief violates the supreme court rule governing the form of briefs (see Ill. S. Ct. R. 341 (eff. Oct. 1, 2020)). Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) requires an appellant's brief to provide a statement of facts "which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." The Rule further requires the factual recitation to include "appropriate reference to the pages of the record on appeal." *Id.* When a party fails to comply with the supreme court rule governing briefs on appeal, this court may strike the brief or parts thereof or may disregard the noncompliant material. *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009). We agree that Dr. Pasic's statement of facts violates the Rule because several statements therein lack record citations and the fact section of the brief is replete with argumentative assertions. The violations in Dr. Pasic's brief, however, do not hinder our review. To the extent Dr. Pasic makes assertions not supported by our review of the record, they will be disregarded. See *id.*

¶ 16                              B. Standard of Review

¶ 17    In an appeal of an administrative review action, our role is to review the decision of the agency, not the decision of the circuit court. *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 481 (2005). Questions of law are reviewed *de novo* (*Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995)), while findings of fact are deemed to be *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence (*Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008)). When the question presented is a mixed question of law and fact, we

review for clear error. *Policemen's Benevolent Labor Committee v. Illinois Labor Relations Board, Local Panel*, 2021 IL App (1st) 192209, ¶ 38.

¶ 18    Both parties agree that the proper standard to evaluate the ultimate determination of whether Dr. Pasic made a sufficient showing that he was rehabilitated to warrant the public's trust is a mixed question of law and fact that is reviewed for clear error. We agree that, because the Department was charged with determining the legal effect of a given set of facts in order to rule on Dr. Pasic's restoration petition, the Department's ultimate conclusion on whether Dr. Pasic met the requisite burden is reviewed for clear error. See *Cinkus*, 228 Ill. 2d at 211; *Jimenez v. Department of Financial & Professional Regulation*, 2020 IL App (1st) 192248, ¶ 28.

¶ 19    On the other primary issue presented in this appeal, the parties agree that the issue of whether the Department violated Dr. Pasic's right to due process is a question of law that we review *de novo*. See *Majid v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2015 IL App (1st) 132182, ¶ 32.

¶ 20                                    C. Legal Framework

¶ 21    On appeal, Dr. Pasic challenges the Department's decision to deny his petition to restore his medical licenses. Dr. Pasic agreed to an indefinite suspension of his medical licenses to resolve a disciplinary complaint filed against him by the Department. The suspension had a minimum duration of two years; after that two-year period expired, Dr. Pasic was entitled to petition for the restoration of his medical privileges.

¶ 22    Under the Medical Practice Act, following a term of suspension, the Department may restore a doctor's medical license unless, after an investigation and a hearing, the Department determines that restoration is "not in the public interest." 225 ILCS 60/43 (West 2020). The

Disciplinary Board has defined the standards it uses to determine whether a physician has been sufficiently rehabilitated following a suspension so as to warrant the public trust.

"Upon written application to the Disciplinary Board for restoration of a license or certificate, or for any other relief, the Disciplinary Board shall consider, but is not limited to, the following in determining if the person is to be deemed sufficiently rehabilitated to warrant the public trust:

1) The seriousness of the offense that resulted in the disciplinary action being considered or being taken;

2) The length of time that elapsed since the disciplinary action was taken;

3) The profession, occupation and outside activities in which the applicant has been involved;

4) Any counseling, medical treatment, or other rehabilitative treatment received by the applicant;

5) Continuing medical education courses or other types of courses taken to correct the grounds for the disciplinary action being considered or having been taken;

6) The results of a clinical competency examination, designated by the Disciplinary Board, and paid for by the petitioner;

7) Written reports and oral testimony by peer review committees or other persons relating to the skill, knowledge, honesty, integrity and contriteness of the applicant;

8) Restitution to injured parties;

9) Future plans of the applicant;

10) Involvement of the applicant's family and friends in his or her rehabilitation process;

11) A written report of a physical or mental examination given by a physician selected by the Disciplinary Board and paid for by the person being examined;

12) Any other information evidencing rehabilitation that would bear upon the applicant's request for relief or restoration of a license;

13) Whether the order imposing sanctions was appealed and, if so, whether a reviewing court granted a stay or delay of imposition of the sanction;

14) The date and disposition of any other petition for restoration filed since the last sanction was imposed; and

15) Whether there has been compliance with any probationary terms imposed." 68 Ill. Adm. Code 1285.255(a) (2005).

¶ 23    The physician seeking a restoration of a suspended license bears the burden of proving by a preponderance of the evidence that the license should be restored. 68 Ill. Adm. Code 1110.190(b) (2019). We note the Department is authorized in paragraph 6 of the regulation to require a clinical competency exam designated by the Department. See 68 Ill. Adm. Code 1285.255(a)(6) (2005). However, the consent order between Dr. Pasic and the Department did not have a clinical competency requirement for restoration, and the issue was not raised at the hearing by either party as being relevant to the sufficiency of Dr. Pasic's rehabilitation.

¶ 24    In the Department's Response in Support of the Final Administrative Decision, the Department wrote as follows:

"Plaintiff concedes that Section 1285.130 of the Rules would apply *if* his Petition for Restoration were granted and his suspension were terminated. [Citation.] Plaintiff notes that he would *then* be required to submit his application with all lapsed fees and have his clinical qualifications evaluated by the Medical Licensing Board. [Citation.] *Plaintiff's understanding of the application of Section 1285.130 of the Rules is correct*." (Emphases added.)

¶ 25    On appeal, however, the Department asserts that in the circuit court, in light of a then-recent circuit court ruling in a separate case, the Department "accepted for argument's sake" that "section 1285.130's competency requirements did not directly apply in restoration hearings." In the circuit court the IDFPR argued that regardless, "Pasic's petition was denied because he did not show that he was sufficiently rehabilitated, not because he did not comply with section 1285.130." In this appeal the Department argues that it has "construed section 1285.130(c) to encompass restoration proceedings *** that follow disciplinary suspensions" and that, "consistent with the Department's practice *at the time*, *** Pasic also would need to comply with section 1285.130(c)." (Emphasis added.)

¶ 26    The Department acknowledges that it currently employs a two-step process to a physician seeking to restore his license. First, the suspended physician must show sufficient rehabilitation to warrant the public trust under section 1110.190(b). See 68 Ill. Adm. Code 1110.190(b) (2019). The Department acknowledges that if a suspended physician is able to do so, then the license suspension would be removed. Second, under its current process, "if more than three years had passed since that petitioner practiced medicine, his [or her] license would be transferred to

inactive status, and he [or she] would have to demonstrate clinical competency as required by section 1285.130(c) before his [or her] license could be returned to active status."

¶ 27     In this appeal, the Department argues that, despite its modification of its practices, the Director's reference to section 1285.130(c) did not deprive Dr. Pasic of due process because the identification of Dr. Pasic's noncompliance with section 1285.130(c) was only an "additional concern" for the Director but not determinative. Dr. Pasic argues however, that the Department faulted him for not demonstrating his compliance with the clinical competency requirements at the restoration from suspension stage and considered it to be evidence that he had not shown rehabilitation.

¶ 28                                             D. Due Process

¶ 29     We will first address Dr. Pasic's due process claims. Dr. Pasic argues that the Department violated due process in two ways when it denied his petition to restore his medical licenses. First, he argues that his right to due process was violated when the Department considered the allegations against him as concrete evidence of wrongdoing. Dr. Pasic contends that the allegations against him were never proved, as he entered into a settlement with the IDFPR before a hearing was held and, by the express terms of the settlement, did not admit any of the allegations made against him. Second, he argues that his right to due process was violated when the Department considered the issue of clinical competency when ruling upon his petition to restore his medical privileges. Dr. Pasic contends that clinical competency is not at issue in the determination of rehabilitation from discipline

¶ 30     Administrative proceedings are governed by the fundamental principles and requirements of due process of law. *Majid*, 2015 IL App (1st) 132182, ¶ 34. The purpose of administrative review is to make certain that the agency has acted within its judicial bounds, defined by law, to

guard those statutory and constitutional rights guaranteed to one subject to administrative action and to ascertain whether the record supports the order issued. *Edwards v. City of Quincy*, 124 Ill. App. 3d 1004, 1012 (1984). The reviewing court has a duty to ensure that due process and an impartial adjudication were provided at the administrative hearing. *Marozas v. Board of Fire & Police Commissioners of the City of Burbank*, 222 Ill. App. 3d 781, 791 (1991).

¶ 31    With regard to the first issue of Dr. Pasic not being allowed to refute the allegations of the complaint, we find no due process violation. When Dr. Pasic entered into the consent order, he agreed that, after a hearing, the Disciplinary Board might find violations of the Medical Practice Act. Thus, there was no abuse or denial of due process when the hearing officer prohibited evidence to refute the allegation of the complaint. Dr. Pasic now argues that, when he entered into the consent agreement, he was only admitting that a violation could be found with regard to his failure to disclose relevant information to credentialing authorities, but not with regard to the allegations of sexual misconduct. However, no such distinction was made in the consent order. Instead, Dr. Pasic globally admitted that if the matter in this case proceeded to a hearing on the merits, there was evidence on which a factfinder could find a violation of the Medical Practice Act. Dr. Pasic was not denied his right to due process when the Department considered the allegations that gave rise to his suspension as part of considering the seriousness of the offense. See 68 Ill. Adm. Code 1285.255(a)(1) (2005).

¶ 32    Dr. Pasic next contends that he was denied due process when the Department considered clinical competency, where the issue was not raised by either party and where the issue is not applicable to petitions for restoration from discipline. In the Department's final administrative decision, the defendant Director stated that Dr. Pasic was required to demonstrate his competency to practice medicine. In this court, the Department concedes that the circuit court in

a different case has agreed with Dr. Pasic's view that section 1285.130 does not apply directly in restoration proceedings that follow discipline. See 68 Ill. Adm. Code 1285.130 (2007). In both the circuit court and in this court, the Department concedes that the competency component discussed by the Director in the final administrative decision is not currently a factor to be considered in determining whether a petitioner seeking restoration of medical privileges has met his burden of demonstrating rehabilitation. We find that the clinical competency requirement is not applicable until there has already been a finding of rehabilitation and that the Department concedes that the competency requirement is not applicable in a restoration proceeding.

¶ 33    This court interprets administrative rules and regulations under the same standards that govern the construction of statutes. *In re Q.P.*, 2022 IL App (1st) 220354, ¶ 17. "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." (Internal quotation marks omitted.) *Id.* When the language of the rule is plain and certain, the court is not free to give it a different meaning. *Id.* "[A] court may not depart from the plain [administrative] language by reading into it exceptions, limitations, or conditions not expressed by the legislature." (Internal quotation marks omitted.) *Id.* The administrative regulations governing medical disciplinary proceedings detail the requirements that a licensee needs to meet to have his license restored following a period of suspension. See 68 Ill. Adm. Code 1285.255 (2005). The particular regulation governing rehabilitation from discipline contains a nonexhaustive list of the factors the agency should consider when determining whether a suspended physician has shown sufficient rehabilitation to warrant the restoration of his license. 68 Ill. Adm. Code 1285.255(a) (2005). The criteria set

forth in section 1285.255 generally provides the framework for a restoration hearing like the one Dr. Pasic participated in during the administrative proceedings below.

¶ 34    As a separate matter, the administrative regulations for medical licensing, renewal, and restoration detail the requirements that a licensee needs to meet to restore an expired or inactive medical license. See 68 Ill. Adm. Code 1285.130 (2007). This regulation does not speak specifically to a license suspended for disciplinary reasons, but it provides that if a medical license is expired or inactive for more than three years, the licensee must complete 150 hours of continuing education along with at least one other enumerated form of evaluation that would demonstrate competency. See 68 Ill. Adm. Code 1285.130(c) (2007). The plain language of the rules at issue here is clear and does not contain a condition that the Department should consider compliance with section 1285.130 in a restoration proceeding following a period of suspension for disciplinary reasons. Therefore, we find that noncompliance with section 1285.130 was not applicable in this case.

¶ 35    We also find that, because the Department concedes that the competency requirement is not applicable in a restoration proceeding, we reject the Department's characterizations of its reliance on the competency requirement as unsubstantial. On appeal, while the Department concedes that it no longer considers clinical competency in cases such as this, it argues that the final administrative decision was based on a determination that Dr. Pasic failed to show he was sufficiently rehabilitated to warrant the public trust, independent of the competency requirements. It contends that the Director's statement about Dr. Pasic's failure to demonstrate that he met the clinical competency requirements was just an "additional reference" to go along with the ultimate finding that Dr. Pasic did not meet his burden of showing the requisite

14

rehabilitation. The Department also contends that the ALJ noted the competency issue as just "an additional concern."

¶ 36     A concession may be found in the conduct of a party in litigation. See, *e.g.*, *CFC Investment, L.L.C. v. McLean*, 387 Ill. App. 3d 520, 529 (2008) ("By using such evidence, extrinsic to the letter, CFC effectively conceded the admissibility of parol evidence concerning the meaning of the letters it poses as the contract."). A party may concede a question of law but that concession is not binding on this court. See, *e.g.*, *Metropolitan Property & Casualty Insurance Co. v. Stranczek*, 2012 IL App (1st) 103760, ¶ 20 ("as a court of review, we are not bound by a party's concessions").

"Admissions come in two varieties, judicial and evidentiary. A judicial admission is conclusive upon the party making it; it may not be controverted at trial or on appeal. Judicial admissions are not evidence at all but rather have the effect of withdrawing a fact from contention. [Citation.] Included in this category are admissions made in pleadings, formal admissions made in open court, stipulations, and admissions pursuant to requests to admit. [Citation.]

* * *

The general rule, however, is qualified. It applies only when a party's testimony, taken as a whole, is unequivocal. The rule is inapplicable when the party's testimony is inadvertent, or uncertain, or amounts to an estimate or opinion rather than a statement of concrete fact. In addition, the rule is inapplicable when the facts relate to a matter about which the party could easily have been mistaken, such as swiftly moving events preceding a collision in which the party was injured." (Internal quotation marks omitted.) *Brummet v. Farel*, 217 Ill. App. 3d 264, 267 (1991).

¶ 37    This court will give substantial weight and deference to an agency's interpretation of its own statute unless it is erroneous, unreasonable, or conflicts with the statute. *Cook County School District 130 v. Illinois Educational Labor Relations Board*, 2021 IL App (1st) 200909, ¶ 24. In this case, the Department has admitted it currently applies section 1285.130 in a manner consistent with interpreting that regulation not to apply in proceedings to restore a license after a disciplinary suspension at the first step of the overall restoration process. As demonstrated above, that interpretation is not erroneous or unreasonable and does not conflict with the plain language of the applicable regulations. See *id.* At least one judge of our circuit court has similarly interpreted the regulation prompting the Department to conform its proceedings to that view. That decision is entitled to great deference by this court. *Id.* The Department's statement in its Response in the circuit court was clear and unequivocal. The Department did not make the statement about a matter—the interpretation of its own rules—about which it could easily have been mistaken. We find that the Department has by its own statements and actions conceded that Dr. Pasic's interpretation of the regulation is correct.

¶ 38    This appeal involves only the first step of the Department's new, two-step process. The Department's reliance on the competency requirement was erroneous and substantial. In his report, the ALJ observed that "[a]lthough neither party addressed Petitioner's competency to practice at the formal hearing, the ALJ believes it is an issue that requires discussion." The ALJ then made a finding that section 1285.130 applies in this case, and he considered Dr. Pasic's failure to meet the competency requirements before recommending that Dr. Pasic's petition for restoration be denied. The ALJ dedicated three pages of his decision to the nonapplicable competency requirements. The ALJ concluded that,

"[a]lthough the Rule speaks to a license that has been expired or been placed on inactive status for three years, the ALJ finds that the legislative intent was to ensure that standards of competency to practice medicine are met and, therefore, finds that *Section 1285.130 applies in the instant case*." (Emphasis added).

The ALJ further explained his belief that "the requirements of section 1285.130 *are applicable to this Respondent*." (Emphasis added). The ALJ concluded in his analysis that "Petitioner has not had an active physician license in over three years and *must now comply* with the requirements delineated in the Rules for the Administration of the Medical Practice Act 68 Ill. Admin. Code Section 1285.130." (Emphasis added).

¶ 39    As the ALJ noted when he raised the competency requirement on his own volition, neither party addressed the matter at the restoration hearing. Dr. Pasic was taken by surprise when the matter was raised by the ALJ, and then it was used against him as evidence throughout the administrative process that he had not been rehabilitated.

¶ 40    The final administrative decision adopts the Disciplinary Board's findings of fact, conclusions of law, and recommendation. The Disciplinary Board adopted the findings of fact, conclusions of law, and recommendation from the ALJ. In issuing the administrative decision, the Director leaned heavily on the conclusions made by the ALJ. In the final administrative decision, the Department made it apparent that it was considering Dr. Pasic's failure to demonstrate compliance with the competency requirements as a factor in determining that he had not shown adequate rehabilitation. The Director explained that because Dr. Pasic did not have an active license for three years due to his suspension, "he must be comply (*sic*) with 68 Ill. Admin. Code 1285.130 to demonstrate competency with the practice of medicine." The Director further explained that "Petitioner must comply with the requirements contained in [section 1285.130]."

We agree with Dr. Pasic that the wrongful consideration of his noncompliance with section 1285.130 violated his right to due process in the administrative proceedings.

¶ 41    In the final administrative decision, the Director's conclusion that Dr. Pasic failed to meet the clinical competency requirement figures prominently. It is not mentioned as an afterthought or by mere reference. After noting that the Department was adopting the findings and conclusions made by the ALJ and the Disciplinary Board, the Director then laid out the rationale supporting the decision to deny Dr. Pasic's petition. The Director explained that the allegations leveled against Dr. Pasic were serious and undermined the purposes of the Medical Practice Act. The Director then recounted the ALJ's findings that Dr. Pasic's continuing education work was not all that compelling to demonstrate his rehabilitation and that the character witnesses he presented were not all that compelling because the witnesses had personal relationships with Dr. Pasic. The Director's analysis concludes with the discussion of Dr. Pasic's failure to demonstrate compliance with the competency requirements (section 1285.130). In all, the Director's analysis is four paragraphs, and one of the paragraphs is dedicated to Dr. Pasic's failure to comply with the competency requirements in section 1285.130. The Director does not state in the decision that the competency requirements are some ancillary consideration. There is a reasonable likelihood that the consideration of the improper factor affected the ultimate administrative decision. While it is impossible to know the amount of weight the Director placed on that consideration when arriving at the final decision, a plain reading of the order clearly shows that Dr. Pasic's failure to demonstrate competency under section 1285.130 was a contributing factor to the conclusion that he had not shown rehabilitation sufficient to warrant his licenses being restored.

¶ 42    The Department attempts to extricate its consideration of the competency requirement as separate from its determination that Dr. Pasic failed to show sufficient rehabilitation. However, there is no suggestion anywhere in the record that the Department's determination on the question of rehabilitation was made separately from its consideration of the competency requirements. In fact, both the ALJ and the Director stated that the competency requirements were applicable to these proceedings—that they applied to this petition for restoration from discipline. The competency requirement analysis was part of the calculus in deciding whether Dr. Pasic had shown sufficient rehabilitation. The ALJ made repeated references to the applicability of section 1285.130 to these proceedings, and the Director stated that Dr. Pasic "must comply with the requirements contained in [section 1285.130]" before concluding in the very next sentence that Dr. Pasic failed to show that he warrants the public trust.

¶ 43    We reject the Director's proposal that we ignore its consideration of the competency requirement in assessing Dr. Pasic's rehabilitation for purposes of the restoration petition. The Department speculates that "[the Director's] decision would have been the same apart from section 1285.130." We decline to engage in the same speculation in order to overlook the violation of Dr. Pasic's due process rights in his administrative hearing. Dr. Pasic was entitled to have his rehabilitation considered independent of whether he may later have to demonstrate clinical competency to have his license returned to active status.

¶ 44    Due process of law implies the administration of equal laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the case and proceeding upon notice and hearing. *Murphy v. Collins*, 20 Ill. App. 3d 181, 187 (1974). The due process clause protects fundamental justice and fairness. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272 (2004). "It is fundamental that a

decision pursuant to an administrative hearing must be based upon testimony and other evidence received at the hearing and that a conclusion influenced by extraneous considerations must be set aside." *Des Plaines Currency Exchange, Inc. v. Knight*, 29 Ill. 2d 244, 247 (1963). If the procedures used by an administrative agency violate fundamental fairness and a party's due process rights, the appellate court should reverse the agency's decision. *Kimble v. Illinois State Board of Education*, 2014 IL App (1st) 123436, ¶ 78. In this case, the improper consideration of section 1285.130 and its influence on the ultimate determination violated Dr. Pasic's due process rights, such that the Department's decision cannot stand.

¶ 45    Typically, to succeed on a claim of a due process violation in an administrative proceeding, there must be a showing of prejudice. *Majid*, 2015 IL App (1st) 132182, ¶ 34. So along with finding a due process violation, we must determine whether Dr. Pasic was prejudiced. We are also charged with reviewing the entire record when deciding whether to uphold a decision on administrative review. 735 ILCS 5/3-110 (West 2020). Without weighing the evidence or assessing credibility, our review of the record demonstrates that Dr. Pasic made at least an arguable case that he was entitled to the restoration of his medical licenses. He submitted documentary evidence and testimony from himself and from three other witnesses that touched on many of the considerations set forth in the applicable regulation (68 Ill. Adm. Code 1285.255(a) (2005)). It is impossible to tell the impact that the Department's consideration of an improper factor had on its ultimate determination. However, if a factfinder accepted the testimony from Dr. Pasic and the other witnesses, it could reasonably find in his favor. Thus, we conclude that Dr. Pasic is entitled to a new administrative hearing on his petition to restore his medical licenses. Because we find that the due process violation entitles Dr. Pasic to a new administrative hearing, we do not reach the other issues he raises on appeal.

¶ 46                                    III. CONCLUSION

¶ 47     Accordingly, we reverse the judgment of the circuit court and the Department's final

administrative decision. We remand the matter to the Department for a new administrative

hearing.

¶ 48     Reversed and remanded.

*Pasic v. Department of Financial & Professional Regulation*, 2022 IL App (1st) 220076

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-005814; the Hon. Pamela M. Meyerson, Judge, presiding. |
| **Attorneys for** **Appellant:** | Sabrina Elliott, of Crick Walanka Law Group, Ltd., of Chicago, for appellant. |
| **Attorneys for** **Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellees. |